**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**MARC DESMARAIS**,
7410 Terrill Drive
Wellington, CO 80549

*Plaintiff*,

v.

**JENNIFER M. GRANHOLM**, in her official capacity as Secretary of Energy,
1000 Independence Ave SW
Washington, DC 20585

Serve: Merrick Garland, U.S. Attorney General
950 Pennsylvania Avenue NW
Washington, D.C. 20530

Serve: Matthew Graves, U.S. Attorney for the District of Columbia
950 Pennsylvania Avenue NW
Washington, D.C. 20530,

**UNITED STATES DEPARTMENT OF ENERGY,**
1000 Independence Ave SW
Washington, DC 20585

**JENNIFER RODGERS**, individually and in her official capacity as Senior Vice President and Chief Administrative Office of the Western Area Power Administration,
1000 Independence Ave SW
Washington, DC 20585

**TARAK SHAH**, individually and in his official capacity as (former) Chief of Staff to the Secretary of the Department of Energy,
1000 Independence Ave SW
Washington, DC 20585

*Defendants.*

Civil Action No.: 1:23-cv-1541

**JURY TRIAL DEMANDED**

# COMPLAINT

COMES NOW, Plaintiff Marc Desmarais ("Plaintiff"), by and through undersigned counsel, and files this Complaint against Defendants Jennifer M. Granholm, in her official capacity as Secretary of Energy, Jennifer Rodgers, individually and in her official capacity as Senior Vice President and Chief Administrative Office of the Western Area Power Administration, and Tarak Shah, individually and in his official capacity as former Chief-of-Staff to the Secretary of Energy (collectively, "Defendants" or "DOE") on the grounds and for the relief sought as follows:

## NATURE OF THE ACTION

1. This action seeking declaratory and injunctive relief, monetary damages, and other appropriate relief is brought to redress Defendants' violations of Plaintiff's rights secured to him under the United States Constitution, federal law, and District of Columbia statutory and common law.

2. Plaintiff brings this action pursuant to, Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), the District of Columbia Human Rights Act as amended, D.C. Code §§ 2-1401.01 *et seq.* ("DCHRA"), the First and Fifth Amendments to the U.S. Constitution, and District of Columbia common law intentional infliction of emotional distress.

## PARTIES

3. Marc Desmarais ("Plaintiff") is a Christian and an adult resident of the State of Colorado who works for the Department of Energy as a Power System Dispatcher Supervisor, AD-6, for the Western Area Power Administration[1] ("WAPA"), which is a sub-agency, division, department, or administration under and within the jurisdiction of the United States Department of

[1] WAPA is an administration under the authority of the DOE and it serves as one of the nation's four (4) power marketing administrations and its role is to market wholesale hydropower generated at 57 different hydroelectric dams.

Energy. WAPA and the DOE each employ more than twenty-five (25) persons, and therefore WAPA, by and through the DOE, qualifies as an employer as intended by 42 U.S.C. § 12111(5).

4. Defendant Jennifer M. Granholm ("Secretary Granholm") is the United States Secretary of Energy ("DOE"), located at 1000 Independence Ave SW, Washington, DC 20585. Secretary Granholm is sued in her official capacity. In her role as Secretary of Energy—the head official of the entire Department of Energy—Secretary Granholm is vicariously liable for the unlawful conduct committed by co-Defendants Jennifer Rodgers ("Ms. Rodgers") and Tarak Shah ("Mr. Shah") and any other subordinate DOE employee acting in the scope of their employment.

5. Defendant United States Department of Energy is a federal agency headquartered in Washington D.C. DOE administers and controls the operation of the Western Area Power Administration ("WAPA"), which is the DOE sub-agency under which Plaintiff is employed at all times relevant to this action.

6. Defendant Jennifer Rodgers ("Ms. Rodgers") is a DOE employee who serves as WAPA's Senior Vice President and Chief Administrative Officer. Ms. Rodgers is an agent of Secretary Granholm, WAPA, and/or the DOE as all actions or omissions complained of herein that involve Ms. Rodgers occurred while she acted in the scope of her employment unless otherwise stated. Ms. Rodgers is being sued in both, her individual and official capacities.

7. Defendant Tarak Shah ("Mr. Shah") is a DOE employee who at all times relevant, served as Secretary Granholm's Chief-of-Staff. Mr. Shah is an agent of Secretary Granholm, WAPA, and/or the DOE as all actions or omissions complained of herein that involve Mr. Shah occurred while he acted in the scope of his employment unless otherwise stated. Mr. Shah is being sued in both, his individual and official capacities.

//

//

## JURISDICTION

8. Jurisdiction is conferred upon this court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12117, both of which provide for original jurisdiction for Plaintiff's claims arising under the laws of the United States.

9. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims brought pursuant to the D.C. Code and District of Columbia common law, in that such claims are so closely related to Plaintiff's federal claims providing the basis for this Court's original jurisdiction as to satisfy the same case or controversy requirement prescribed by Article III of the United States Constitution.

10. In the alternative, this court has diversity jurisdiction over all claims alleged in this action in that Plaintiff is a Colorado resident and Defendant is a citizen of the District of Columbia for diversity jurisdiction purposes.

## VENUE

11. Venue is proper pursuant to U.S.C. §1391 in that Defendant is a resident of the District of Columbia, and a substantial portion of the events and decision-making behind the events giving rise to this action occurred in the District of Columbia.

12. Venue is also proper pursuant to 42 U.S.C. § 2000e-(5)(f)(3) because the alleged unlawful employment practices were committed within this district, the employment records relevant to the alleged unlawful employment practices are maintained in this district, and Defendant maintains its principal office in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. On February 23, 2022, Plaintiff filed a Pre-Counseling Intake with the DOE's EEO Office and initiated the required EEO Interactive Process.

14. On May 9, 2022, Plaintiff completed the EEO Interactive Process and received his Exit Letter and Notice of Right to File a Formal Complaint.

15. On May 24, 2022, Plaintiff filed his formal complaint with DOE's EEO Office and with the Equal Employment Opportunity Commission ("EEOC").

16. On February 28, 2023, the DOE issued Plaintiff its Final Agency Decision ("FAD").

17. Plaintiff received his FAD on March 1, 2023.

18. Plaintiff has exhausted all administrative remedies and complied with all conditions precedent in maintaining this action, in that Plaintiff initiated DOE's EEO Interactive Process within forty-five (45) days of the alleged acts of discrimination, filed his formal complaint within fifteen (15) days of receiving his Exit Letter and Notice of Right to File a Formal Complaint, and Plaintiff hereby initiates this action on May 30, 2023 which is within ninety (90) days[2] of March, 1, 2023, when Plaintiff received DOE's FAD.

## STATEMENT OF FACTS

### I. BACKGROUND

19. On or about on September 9, 2021, President Biden issued Executive Order 14043, which required Plaintiff, and all federal executive employees alike, to receive the COVID-19 vaccination, subject to such exceptions as required by law.

20. A religious accommodation is one such "exception."

21. Under both United States and District of Columbia law, and absent an undue hardship, employers (such as the DOE) are required to reasonably accommodate their employees

---

[2] May 29, 2023 is Memorial Day, which is a federally recognized holiday. Pursuant to Fed. R. Civ. P. 26(a)(2)(C), the last day of the ninety (90) day period Plaintiff has to file a federal action is May 30, 2023, irrespective as to whether the first day of the aforesaid period began to run on February 28, 2023 or March 1, 2023. Therefore, Plaintiff's filing is timely.

(such as Plaintiff) when an employees' sincerely held religious beliefs conflict with a rule or policy, including the subject vaccine mandate at the core of this action.

22. Even if the DOE, independent of Executive Order 14043, promulgates its own rule or policy demanding that its employees become vaccinated against COVID-19, the same holds true: the DOE is required to accommodate its employees sincerely held religious beliefs that conflict with any vaccine mandate[3] unless the DOE can prove doing so would impose upon it an undue hardship.

23. At all times relevant, Plaintiff's sincerely held religious beliefs conflicted with the vaccine mandate, and as a result, he timely submitted a request for a religious accommodation.

24. At all times relevant, the DOE could have reasonably accommodated Plaintiff without incurring or experiencing an undue hardship.

25. At all times relevant, the DOE violated Plaintiff's right to Free Exercise and his right to remain free of discrimination and retaliation in the workplace on the basis of his religion.

26. The DOE received Plaintiff's request for a reasonable accommodation on the basis of his religion.

27. Upon receiving Plaintiff's request for a reasonable accommodation on the basis of his religion, the DOE read the contents therein and at all times relevant, the DOE was placed on notice and had knowledge of Plaintiff's sincerely held religious beliefs.

28. At all times relevant, the DOE knew Plaintiff's sincerely held religious beliefs conflicted with the vaccine mandate.

29. Upon learning and gaining knowledge of Plaintiff's sincerely held religious beliefs and the conflict between his beliefs and the DOE and/or federal vaccinate mandate(s), the DOE

---

[3] The term "vaccine mandate" shall encompass both, the mandate promulgated pursuant to Executive Order 14043 and any other mandatory COVID-19 vaccination policies the DOE issued, enforced, promulgated, or applied.

refused to grant Plaintiff's request; in fact, the DOE even refused to *respond* to his request in abject disregard of its known duty to "respond expeditiously to [Plaintiff's] request for a reasonable accommodation." *See* EEOC Guidance, at 10.

30. Instead of fulfilling its legal obligation to respond to Plaintiff's request and its obligation to grant Plaintiff a reasonable accommodation in light of no undue hardship existing, the DOE intentionally, willfully, purposefully, and/or recklessly elected to discriminate against Plaintiff.

31. The discrimination (as more fully explained below) did not start until the DOE learned of Plaintiff's sincerely held religious beliefs; however, immediately or virtually immediately upon learning that Plaintiff was a Christian and that his sincerely held religious beliefs prohibited his compliance with the vaccine mandate, the DOE began discriminating against him in a variety of ways, including without limitation, by and through harassing Plaintiff, creating a hostile work environment for Plaintiff, failing to accommodate Plaintiff, and disparately treating Plaintiff—and the DOE engaged in each of the aforementioned means of discrimination as a sole, direct, and proximate result of Plaintiff's religion and his sincerely held religious beliefs.

32. At all times relevant, the DOE continued to perpetrate the unlawful discriminatory misconduct complained of herein, beginning as early as September of 2021 and continuing through all months and days up to the date this action is filed.

33. The DOE also engaged in retaliatory misconduct upon learning that Plaintiff, within his right to do so, initiated a pre-complaint filing with the DOE's internal EEO office.

34. The DOE, aware that Plaintiff exercised his right to file a complaint, began retaliating against Plaintiff by subjecting him to various sorts of adverse employment action, including without limitation, substantially changing the duties of his employment and imposing

restrictions on his duties for the purpose of deterring Plaintiff from seeking promotional opportunity or obtaining any promotions thereafter.

35. After filing his pre-complaint form, Plaintiff satisfied all conditions precedent to maintaining this action. Stated differently, Plaintiff timely and properly "exhausted his administrative remedies" prior to commencing this action.

36. Plaintiff commenced this action within the statutory timeframe allotted (i.e., within 90 days from receiving his right-to-sue letter).

37. In greater detail and in providing the specific facts that support the outline plead above, Plaintiff states as follows:

## II. Plaintiff's Religious Accommodation Request

38. On or about September 9, 2021, DOE advised Plaintiff that he was required to become vaccinated against COVID-19 unless he had an exception such as *inter alia* an approved religious accommodation.

39. The following week, on or about September 14, 2021, Plaintiff submitted a request for a reasonable accommodation to the vaccine mandate on the basis of his religion.

40. In his request, Plaintiff explained that he is a Christian and decisions made pursuant to his Catholic-based faith hinge upon a well-formed conscience. As a Christian, Plaintiff's well-formed conscience leads him to sincerely believe he cannot inject unknown vaccines into his body. In support thereof, Plaintiff highlighted the fact that the ingredients and chemicals contained in any of the COVID-19 vaccines available were at all times relevant, unknown, the effects of the vaccines were unknown, and without such knowledge and other relevant information, Plaintiff's sincerely held religious beliefs precluded him from blindly injecting a substance into his body.

41. In further detail, Plaintiff also stated that he sincerely believes his body is not to be altered in any way other than through means by which God created or through scientifically

proven, safe, and effective necessary medical intervention. To consume or knowingly inject anything else into his body would constitute a sin.

42. Plaintiff additionally stated in his request that his sincere religious beliefs also include the belief that God creates life and life begins at conception; therefore, abortion is a sin and because each and every COVID-19 vaccine available at all times relevant was made, derived, produced, developed, or created through the use of aborted fetal cell line tissues, Plaintiff was prohibited from injecting into his body a product that but-for abortion, would not exist. If Plaintiff were to do so, such action would constitute contributing and/or condoning abortion, which directly violates Plaintiff's sincerely held religious beliefs, and such action is a sin that one day, could prevent Plaintiff from ultimately going to Heaven and sharing that Place with God.

43. At all times relevant, the DOE knew Plaintiff's sincerely held religious beliefs prohibited him from complying with the vaccine mandate promulgated under Executive Order 14043, or any other vaccine mandate issued, promulgated, or enforced by the DOE and/or any of its sub-agencies, including WAPA.

44. Prior to receiving Plaintiff's request for a religious accommodation, Defendants never discriminated against him.

45. However, once Defendants learned that Plaintiff was a Christian who held pro-life religious views and sincerely believed he could not inject an unknown substance into his body, Defendants began to discriminate against him.

46. The aforementioned newly acquired knowledge Defendants obtained by and through the receipt of Plaintiff's religious accommodation request is the only variable that changed from (1) the time in which Plaintiff worked free of discrimination; (2) to the time in which Plaintiff was discriminated against, and the discrimination to which Plaintiff was subjected directly and proximately related to the verbatim topics addressed in his religious accommodation request.

## III. DEFENDANTS' DISCRIMINATORY CONDUCT

47. As DOE employees and subordinates under the authority of Secretary Granholm, the unlawful acts or omissions committed by co-Defendants Jennifer Rodgers ("Ms. Rodgers"), Plaintiff's Supervisor, WAPA Senior Vice President and Chief Administrative Officer and then-Chief of Staff to the Secretary of Energy Tarak Shah ("Mr. Shah") began harassing Plaintiff.

48. The unlawful acts or omissions committed by Ms. Rodgers and Mr. Shah while in the scope of their employment give rise to liability under a theory of *respondeat superior*. the authority of Defendant and all acts alleged herein and at all times relevant to this action, Ms. Rodgers and Mr. Shah acted within the scope of their employment.

49. After learning of Plaintiff's religion and sincerely held religious beliefs, Defendants began harassing Plaintiff based on this newly acquired knowledge.

50. On or about December 27, 2021, Defendants advised Plaintiff that his Reasonable Accommodation Request would be processed in a "specific order." Under this "specific order" Defendants refused to respond to religious accommodation requests and only focused on medical accommodation requests. Defendants advised that it would not be responding to any religious accommodation requests, and Defendants refused to advise as to when, if ever, the DOE would cease to deprive religious persons of their right to a case-by-case review of their religious accommodation requests.

51. On or about December 30, 2021, Ms. Rodgers ordered Plaintiff to "get vaccinated" because the DOE's "official message has to align with that of our leadership. Ms. Rodgers then also demanded that Plaintiff vaccinate his children, as well.

52. On January 6th, 2022, Defendants acknowledged that the vaccine does not prevent contraction or transmission of COVID-19. Despite this public declaration of the vaccine's

inefficacy, the DOE continued to ignore Plaintiff and other religious DOE employees' accommodation requests and further insisted that they become vaccinated.

53. On or about January 13, 2022, Defendants began blaming Plaintiff for the pandemic and using innuendo for telling Plaintiff he was "wrong" for exercising his right to Free Exercise. Specifically, Defendants told Plaintiff that "[e]veryone else has taken steps to protect DOE community . . . [and] most of us have done everything right over the past two years" — a statement which its inverse claims Plaintiff has not protected the DOE community and he is not "right" (i.e., he is wrong) for being a Christian and exercising his beliefs. The communication ended with Defendants directing Plaintiff to re-read the DOE's stance that demands he become vaccinated against his religious beliefs.

54. Eleven (11) days later, on January 24, 2022, Plaintiff was relieved to learn that the "obligation"—albeit an unlawful obligation—that he vaccinate himself against his will and in violation of his sincerely held religious beliefs ceased to exist. On that day, a federal court enjoined the enforcement of the vaccine mandate nationwide and halted its enforcement against all federal employees, including Plaintiff.

55. Upon the issuance of the aforesaid injunction, no vaccine mandate existed. Thus, while the choice to become vaccinated remained, there was no obligation to do so, and more importantly, there was no policy, order, rule, regulation, or law to which Plaintiff needed to obtain an accommodation in order to remain free from inoculation.

56. The DOE even recognized no requirement existed and Plaintiff no longer needed to become vaccinated, stating:

> To ensure compliance with an applicable preliminary nationwide injunction, which may be supplemented, modified, or vacated, depending on the course of ongoing litigation, **the [DOE] will take no action to implement or enforce the COVID-19 vaccination requirement** pursuant to Executive Order (E.O.)

> 14043 on Requiring Coronavirus Disease 2019 Vaccination for Federal Employees.

57. Despite this, Defendants ignored the directive issued by the Safer Federal Workforce Task Force and continued to discriminate against Plaintiff and demand that he violate his sincerely held religious beliefs.

58. Long after the requirement to become vaccinated ceased to exist, Defendants continued harassing Plaintiff and created a hostile work environment because of his religion.

59. In addition to incessant, harassing emails demanding that Plaintiff get vaccinated, Defendants then moved onto instituting discriminatory policies designed to single out the DOE's religious employees, such as Plaintiff.

60. In March of 2022, Defendants began enforcing a policy that targeted religious DOE employees. Specifically, the policy demands religious persons submit to arbitrary COVID-19 testing on a weekly basis, regardless of whether they have naturally acquired immunity or not.

61. The arbitrary nature of this policy is based upon the well-established fact that vaccination against COVID-19 does not prevent contraction or transmission of the virus. Thus, to demand religious persons to test while not requiring non-religious persons to test—despite the fact that *both* religious and non-religious persons can contract and transmit COVID-19, is arbitrary, futile, and patently discriminatory.

62. Of course, Defendants threatened Plaintiff by advising him that failure to violate his religious beliefs or refusal to comply with the DOE's arbitrary weekly testing policy would result in disciplinary action taken against him.

63. Sadly, this threat became a reality. Due to Plaintiff's engagement in constitutionally protected activity, that is, the free exercise of his religion, Defendants discriminated against him by substantially changing his employment duties. For example, Plaintiff not only had to test every

week, but Defendants also refused to allow Plaintiff to travel for work, which is something he has done throughout the entirety of his employment as travel is a necessary and essential factor in promotional considerations.

64. Defendants specifically refused to let Plaintiff travel because Defendants knew it would not only stifle Plaintiff's career growth and result in the denial of a promotion that Plaintiff was overwhelmingly qualified to receive, but also, because doing so would make Plaintiff's work environment even more pervasive and hostile due to the bright-line divide Defendants intentionally created.

65. Specifically, on or about March 29, 2022, Plaintiff received a notification that he was not allowed to travel to Phoenix, Arizona, to attend the semi-annual RMR Operations supervisors' meeting in person on March 30-31, 2022. The sole reason Plaintiff was not permitted to attend the meeting was because of his religion and his sincerely held religious beliefs.

66. The divide within the workplace was intended to ostracize any religious person who did not heed to the policy demands the DOE wanted to uniformly apply to all its employees; those who were religious, however, did not fit the narrative the DOE feverishly sought to uphold.

67. Another example of the unlawful discrimination and retaliation Defendants took against Plaintiff pertains to the disparity between the return-to-work policies applicable to the religious and the non-religious.

68. Any non-religious employee who worked for the DOE that contracted COVID-19 (despite being vaccinated) was permitted to return to work so long as they "swore" they had tested negative for COVID-19.

69. Specifically, on May 23, 2022, WAPA Administrative Officer Ms. Kellie Petty ("Ms. Petty") informed Plaintiff that he, as a religious employee, was required to test for COVID-19 tested, but non-religious employees had no such requirement.

70. bargaining unit employees did not have to get tested, when the county COVID-19 levels reached "Medium." Complainant is a non-bargaining unit employee.

71. Contrarily, any religious employee who worked for the DOE that contracted COVID-19 had to not only test, but had to test in front of a proctor and on video in order to be able to return to work.

72. In a June 1, 2022 email from the WAPA Leadership Development Program, Complainant learned that vaccinated employees attending the WAPA leadership summit in Denver, Colorado, on July 18, 2022, were not required to get COVID-19 tested and could voluntarily perform a self-administered test without a proctor or video. Complainant asserted that WAPA's decision to have two sets of testing standards for vaccinated and unvaccinated employees alienated staff based on their religious beliefs or medical status.

73. Specifically, on or about June 3, 2022, WAPA's Emergency Management Program Manager Ms. Tiffani DeFore ("Ms. DeFore") told Plaintiff that non-religious DOE employees who tested positive for COVID-19 only needed to verify that they took a COVID-19 test.

74. Upon learning this information, on or about June 3, 2022, Plaintiff contacted Ms. Rodgers to see if the aforementioned blatantly discriminatory test-to-return policy was actually true. Ms. Rodgers confirmed the discriminatory policy was, indeed, true and being enforced.

75. Boiled down to its essence, Defendants treated Plaintiff differently and with disparity as a means to discriminate against him because of their disdain for the Christian faith. And because Plaintiff remained steadfast in his sincerely held religious beliefs, Defendants harassed him, ridiculed him, created a hostile work environment, refused to accommodate him, and even went so far as to punish Plaintiff and take actions that were calculated and designed to ensure that it would be nearly impossible for Plaintiff to be considered for a promotion again."

76. At all times relevant, Plaintiff satisfied or exceeded his employer's reasonable expectations as to job performance and he is able to perform the essential functions of his job with or without a reasonable accommodation. Plaintiff demonstrated his ability to perform the essential functions and duties of his job as evidenced by factors including without limitation, his education, experience, work history, performance reviews, tenure, clean personnel record, and numerous statements, reports, and records produced in the scope of his employment memorializing his sufficient or exceptional performance.

77. At all times relevant, Plainitff complied with all COVID-19 mitigation protocols the DOE implemented while the vaccine mandate existed, including *inter alia* wearing masks and socially distancing, and Plaintiff remained amenable at all times to complying with these mitigation protocols as they did not violate his sincerely held religious beliefs. Defendants knew Plaintiff was amenable to complying with these mitigation protocols—any of which could have served as a reasonable accommodation.

78. The mitigation protocols, both individually and collectively, have evidenced-based track records demonstrating their effectiveness and the feasibility with which the DOE is able to implement and provide any or all of the mitigation protocols.

79. Based upon the DOE's provision of the aforesaid mitigation protocols and the continuation of such provision of the same during the pendency the vaccine mandate was in effect, it is not subject to reasonable dispute that the aforesaid mitigation protocols do not impose upon the DOE an undue hardship.

80. Based upon the DOE's provision of the aforesaid mitigation protocols even after the vaccine mandate was no longer in effect, it is not subject to reasonable dispute that the DOE concedes these mitigation protocols sufficiently achieve the objective of mitigating the contraction and transmission of COVID-19.

81. Alternatively, to the extent the DOE does not concede that the alternative mitigation protocols satisfy the objective for which the vaccine mandate existed, taking such position evidences the fact that the DOE had no reason to force Plaintiff to engage in such measures after the vaccine mandate ceased to exist but-for the reason of harassment, discrimination, and retaliation because of Plaintiff's sincerely held religious beliefs.

82. Plaintiff has always been amenable, and Plaintiff remains amenable, to abiding by the aforesaid mitigation protocols, and the DOE was aware of his amenability to the same at all times relevant. Plaintiff merely objected to being forced to partake in these measures because he is religious, which is evidenced by the fact that no other non-religious person was required to satisfy these conditions of employment in order to maintain their jobs.

83. The reasonable religious accommodation Plaintiff sought would not impose an undue hardship upon the DOE and it does not impose an undue hardship upon the DOE.

84. Plaintiff sincerely holds religious beliefs, as explained more fully above.

85. Plaintiff's religious beliefs are sincerely held.

86. Plaintiff's sincerely held beliefs are religious in nature because his beliefs pertain to a relationship with God and involve duties superior to those arising from human relations.

87. Because the continued discrimination and retaliation against Plaintiff and other religious persons continues as of the date of this filing, Plaintiff seeks economic, non-pecuniary, and injunctive relief based on the following claims:

## COUNT I
### RELIGIOUS DISCRIMINATION
### Violation of Title VII

88. Plaintiff re-alleges and incorporate by reference all preceding paragraphs as if fully set forth herein.

89. Plaintiff sincerely holds religious beliefs that *inter alia* prohibit him from becoming vaccinated against COVID-19 and he is a member of a protected class based on his religion.

90. Plaintiff is an employee within the meaning of Title VII.

91. DOE is an employer within the meaning of Title VII.

92. WAPA is an employer within the meaning of Title VII.

93. Title VII forbids Defendants from discriminating against Plaintiff on the basis of his need for a religious accommodation absent proof that granting him an accommodation would impose upon DOE an undue hardship. 42 U.S.C. §§ 2000e(j), 2000e-2(a)(1); *EEOC v. Abercrombie & Fitch Stores, Inc*., 575 U.S. 768, 774 (2015).

94. This extension of actionable religious discrimination to include a failure to accommodate derives from Title VII's definition of "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

95. Here, Plaintiff advised DOE of his sincerely held religious beliefs, including his religious beliefs that: (1) vaccination is not morally obligatory in principle and so must be voluntary; (2) there is a general moral duty to refuse the use of medical products, including certain vaccines, that are produced using human cell lines derived from direct abortions; (3) a person's informed judgments about the proportionality of medical interventions are to be respected unless they contradict authoritative Christian moral teachings; (4) a person is morally required to obey his or her sure conscience; and that (5) abortion is a sin and contrary to the teachings of the Christian Church and as a result, a Christian may invoke Church teaching to refuse a vaccine developed or produced using abortion-derived cell lines.

96. Failure to abide by these sincerely held religious beliefs is a dereliction of his primary loyalty to God and, absent an accommodation, Plaintiff could not comply with DOE's mandatory COVID-19 vaccination without violating his sincerely held religious beliefs.

97. Plaintiff informed DOE of this conflict and expressly sought an accommodation.

98. Defendants received Plaintiff's accommodation request, and otherwise were apprised of and had knowledge of the conflict between his sincerely held religious beliefs and DOE's vaccine mandate.

99. In response to Plaintiff's request for an accommodation, Ms. Rodgers purposefully, willfully, intentionally, or recklessly subjected Plaintiff to a hostile work environment by engaging in a series of actions, including:

a. Harassing Plaintiff because of his religion;

b. Coercing, intimidating, threatening, and otherwise restricting Plaintiff by prohibiting him from returning to work in a manner akin to the conditions imposed upon non-religious persons;

c. Refusing to accommodate Plaintiff by ordering him to work under conditions vastly different than he had worked for years prior to Defendants learning of his religion and vastly different from the conditions of employment under which non-religious persons were permitted to work;

d. Targeting Plaintiff and attempting to constructively oust him because of his religion;

e. Refusing to allow Plaintiff to obtain a reasonably accommodation for his sincerely held religious beliefs;

f. Refusing to accept, review, or respond to Plaintiff's request for a religious accommodation;

g. Intentionally altering the means by which accommodation requests were submitted by arbitrarily modifying the procedure to seek an accommodation repeatedly and without purpose, other than the purpose of confusing Plaintiff or manufacturing pretext for discriminating against him;

h. Refusing to review, acknowledge, or respond to Plaintiff's request for an accommodation;

i. Threatening Plaintiff with disciplinary action, including termination;

j. Taking disciplinary action against Plaintiff because he engaged in constitutionally protected activity, including filing a complaint for discrimination and exercising his right to free exercise of religion;

k. Forcing Plaintiff to be monitored heavily in the event he contracted COVID-19 while non-religious persons were not monitored; and

l. Substantially altering the terms of Plaintiff's employment by revoking longstanding duties and tasks he always completed and satisfied at or above expectations, including duties and tasks that are necessary and required for career-advancement, such as completion and participation in work-related travel.

100. Ms. Rodgers is an agent of DOE committed the aforesaid acts or omissions with the intent to humiliate, ridicule, and insult Plaintiff.

101. Ms. Rodgers committed the aforesaid acts or omissions with the intent to humiliate, ridicule, and insult Plaintiff.

102. In response to Plaintiff's request for an accommodation, Mr. Shah purposefully, willfully, intentionally, or recklessly subjected Plaintiff to a hostile work environment by engaging in a series of actions, including:

a. Harassing Plaintiff because of his religion;

b. Coercing, intimidating, threatening, and otherwise restricting Plaintiff by prohibiting him from returning to work in a manner akin to the conditions imposed upon non-religious persons;

c. Refusing to accommodate Plaintiff by ordering him to work under conditions vastly different than he had worked for years prior to Defendants learning of his religion and vastly different from the conditions of employment under which non-religious persons were permitted to work;

d. Targeting Plaintiff and attempting to constructively oust him because of his religion;

e. Refusing to allow Plaintiff to obtain a reasonably accommodation for his sincerely held religious beliefs;

f. Refusing to accept, review, or respond to Plaintiff's request for a religious accommodation;

g. Intentionally altering the means by which accommodation requests were submitted by arbitrarily modifying the procedure to seek an accommodation repeatedly and without purpose, other than the purpose of confusing Plaintiff or manufacturing pretext for discriminating against him;

h. Refusing to review, acknowledge, or respond to Plaintiff's request for an accommodation;

i. Threatening Plaintiff with disciplinary action, including termination;

j. Taking disciplinary action against Plaintiff because he engaged in constitutionally protected activity, including filing a complaint for discrimination and exercising his right to free exercise of religion;

k. Forcing Plaintiff to be monitored heavily in the event he contracted COVID-19 while non-religious persons were not monitored; and

l. Substantially altering the terms of Plaintiff's employment by revoking longstanding duties and tasks he always completed and satisfied at or above expectations, including duties and tasks that are necessary and required for career-advancement, such as completion and participation in work-related travel.

103. Mr. Shah is an agent of DOE committed the aforesaid acts or omissions with the intent to humiliate, ridicule, and insult Plaintiff.

104. The aforesaid adverse employment actions occurred because Plaintiff requested an accommodation and/or engaged in protected activity by requesting an accommodation for his sincerely held religious beliefs.

105. All allegations set forth herein violate Title VII.

106. As a direct and proximate result of Defendants' actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,001.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT II
## VIOLATION OF RFRA
## 42 U.S.C. § 2000bbb, *et seq*.

107. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

108. The Religious Freedom Restoration Act ("RFRA") provides that "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a).

109. RFRA also demands that, should the government substantially burden a person's free exercise of religion, it bears the burden of demonstrating that its burden on religious exercise furthers a compelling government interest and is the least restrictive means of achieving that compelling government interest. 42 U.S.C. § 2000bb-1(b).

110. RFRA plainly applies to Defendants, as they constitute a "branch, department, agency, instrumentality, and official of the United States." 42 U.S.C. § 2000bb-2(1).

111. Congress enacted RFRA "to provide very broad protection for religious liberty," going "far beyond what [the Supreme Court] has held is constitutionally required" under the First Amendment. *Hobby Lobby*, 573 U.S. 682, 693, 706 (2014) (emphasis added). As such, RFRA encompasses a very broad definition of "exercise of religion," which includes "'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Hobby Lobby*, 573 U.S. at 696 (quoting 42 U.S.C. § 2000bb—5(7)(A)).

112. RFRA mandated that the law "'be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution.'" *Hobby Lobby*, 573 U.S. at 696 (quoting 42 U.S.C. § 2000cc—3(g)).

113. "RFRA operates as a kind of super statute, displacing the normal operation of other federal laws." *Bostock v. Clayton Cnty*., 140 S. Ct. 1731, 1754 (2020).

114. Plaintiff has sincerely held religious beliefs and he is a member of a protected class.

115. Defendants knew of Plaintiff's sincerely held religious beliefs and the conflict between his beliefs and the DOE's vaccine mandate.

116. The DOE's vaccine mandate, on its face and as applied, targets Plaintiff's sincerely held religious beliefs by prohibiting him from seeking and receiving an accommodation to the mandate.

117. The DOE could have granted Plaintiff a reasonable accommodation without enduring any undue hardship based on the fact that whether Plaintiff is or is not vaccinated is immaterial to the objective the vaccine mandate sought to achieve—that is, the prevention of the contraction and transmission of COVID-19.

118. There can be no undue hardship whereas an act—which in this case, is getting vaccinated—is immaterial to the objective the mandate sought to achieve.

119. Irrespective as to vaccination status, all DOE employees remain similarly situated as anyone, vaccinated or not, can contract and transmit COVID-19.

120. To the extent there is any variance amongst DOE employees, those less likely to contract and/or transmit COVID-19 are those with naturally acquired immunity, such as Plaintiff. Those who are vaccinated are not less likely to contract or transmit COVID-19 than Plaintiff or any other DOE employee who has obtained naturally acquired immunity.

121. Defendants' disparate treatment, failure to accommodate, harassment, and creation of a hostile work environment to which Plaintiff was subjected and continues to be subjected is the direct product of Plaintiff's membership in a protected class.

122. All allegations set forth herein violate RFRA.

123. As a direct and proximate result of Defendant's actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,001.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT III
### DISPARATE TREATMENT
### Violation of the D.C. Human Rights Act

124. Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

125. Plaintiff is a disabled person, a member of a protected class, and a qualified individual as intended by the D.C. Human Rights Act.

126. Plaintiff is an employee and the DOE is Plaintiff's employer as intended by the D.C. Human Rights Act.

127. Defendants had actual or constructive knowledge of Plaintiff's disability at all times relevant to this action.

128. Plaintiff experienced adverse employment action and a materially adverse change in the terms and conditions of his employment based on the allegations articulated above and duly incorporated by reference herein.

129. Defendants committed the actions complained of herein with the intent to humiliate and ridicule Plaintiff and because Plaintiff requested an accommodation, engaged in protected activity, and is a member of a protected class.

130. Defendants disparately treated Plaintiff because of his membership in a protected class by purposefully, willfully, intentionally, or recklessly by engaging in a series of actions, including:

a. Harassing Plaintiff because of his religion;

b. Coercing, intimidating, threatening, and otherwise restricting Plaintiff by prohibiting him from returning to work in a manner akin to the conditions imposed upon non-religious persons;

c. Refusing to accommodate Plaintiff by ordering him to work under conditions vastly different than he had worked for years prior to Defendants learning of his religion and vastly different from the conditions of employment under which non-religious persons were permitted to work;

d. Targeting Plaintiff and attempting to constructively oust him because of his religion;

e. Refusing to allow Plaintiff to obtain a reasonably accommodation for his sincerely held religious beliefs;

f. Refusing to accept, review, or respond to Plaintiff's request for a religious accommodation;

g. Intentionally altering the means by which accommodation requests were submitted by arbitrarily modifying the procedure to seek an accommodation repeatedly and without purpose, other than the purpose of confusing Plaintiff or manufacturing pretext for discriminating against him;

h. Refusing to review, acknowledge, or respond to Plaintiff's request for an accommodation;

i. Threatening Plaintiff with disciplinary action, including termination;

j. Taking disciplinary action against Plaintiff because he engaged in constitutionally protected activity, including filing a complaint for discrimination and exercising his right to free exercise of religion;

k. Forcing Plaintiff to be monitored heavily in the event he contracted COVID-19 while non-religious persons were not monitored; and

l. Substantially altering the terms of Plaintiff's employment by revoking longstanding duties and tasks he always completed and satisfied at or above expectations, including duties and tasks that are necessary and required for career-advancement, such as completion and participation in work-related travel.

131. All allegations set forth herein violate the D.C. Human Rights Act.

132. As a direct and proximate result of Defendant's actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,001.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT IV
### DISPARATE TREATMENT
### Violation of Title VII

133. Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

134. Plaintiff is a religious person, a member of a protected class, and qualified individual as intended by Title VII.

135. Plaintiff is an employee and Defendant is Plaintiff's employer as intended by Title VII.

136. Defendant had actual or constructive knowledge of Plaintiff's sincerely held religious beliefs at all times relevant to this action.

137. Plaintiff experienced adverse employment action and a materially adverse change in the terms and conditions of his employment because of his sincerely held religious beliefs, and his membership in a protected class, including without limitation:

a. Harassing Plaintiff because of his religion;

b. Coercing, intimidating, threatening, and otherwise restricting Plaintiff by prohibiting him from returning to work in a manner akin to the conditions imposed upon non-religious persons;

c. Refusing to accommodate Plaintiff by ordering him to work under conditions vastly different than he had worked for years prior to Defendants learning of his religion

and vastly different from the conditions of employment under which non-religious persons were permitted to work;

d. Targeting Plaintiff and attempting to constructively oust him because of his religion;

e. Refusing to allow Plaintiff to obtain a reasonably accommodation for his sincerely held religious beliefs;

f. Refusing to accept, review, or respond to Plaintiff's request for a religious accommodation;

g. Intentionally altering the means by which accommodation requests were submitted by arbitrarily modifying the procedure to seek an accommodation repeatedly and without purpose, other than the purpose of confusing Plaintiff or manufacturing pretext for discriminating against him;

h. Refusing to review, acknowledge, or respond to Plaintiff's request for an accommodation;

i. Threatening Plaintiff with disciplinary action, including termination;

j. Taking disciplinary action against Plaintiff because he engaged in constitutionally protected activity, including filing a complaint for discrimination and exercising his right to free exercise of religion;

k. Forcing Plaintiff to be monitored heavily in the event he contracted COVID-19 while non-religious persons were not monitored; and

l. Substantially altering the terms of Plaintiff's employment by revoking longstanding duties and tasks he always completed and satisfied at or above expectations, including duties and tasks that are necessary and required for career-advancement, such as completion and participation in work-related travel.

138. Defendants committed such actions with the intent to humiliate, ridicule, and occurred because Plaintiff requested an accommodation and engaged in protected activity, including the exercise of her fundamental right to freely exercise her religion and be free from workplace discrimination based on her religion.

139. All allegations set forth herein violate Title VII.

140. As a direct and proximate result of Defendant's actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,001.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT V
### FAILURE TO ACCOMMODATE
### Violation of the D.C. Human Rights Act

141. Plaintiff incorporates all preceding and subsequent paragraphs hereto as if fully set forth herein.

142. Plaintiff is a disabled person as intended by the D.C. Human Rights Act.

143. Plaintiff is qualified to perform the essential functions of his job if provided a reasonable accommodation by his employer.

144. Plaintiff is an employee and Defendant is Plaintiff's employer as intended by the D.C. Human Rights Act.

145. Defendant had notice of Plaintiff's disability through actual or constructive knowledge.

146. Defendant knowingly, intentionally, recklessly, negligently, or by gross negligence, discriminated against Plaintiff because of his disability by failing or refusing to provide Plaintiff a reasonable accommodation.

147. Providing Plaintiff such accommodation would not cause Defendant to incur undue hardship, either financially or otherwise.

148. All allegations set forth herein violate the D.C. Human Rights Act.

149. As a direct and proximate result of Defendant's actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,001.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT VI
### FAILURE TO ACCOMMODATE
### Violation of Title VII

150. Plaintiff incorporates all preceding and subsequent paragraphs hereto as if fully set forth herein.

151. Plaintiff is a religious person and a member of a protected class entitled to a reasonable accommodation under Title VII.

152. Plaintiff is qualified to perform the essential functions of his job with or without a reasonable accommodation by his employer.

153. Plaintiff is an employee and Defendant is Plaintiff's employer as intended by Title VII.

154. Defendant had notice of Plaintiff's sincerely held religious beliefs through actual or constructive knowledge.

155. Defendants knowingly, intentionally, recklessly, negligently, or by gross negligence, discriminated against Plaintiff because of his religion and his sincerely held religious beliefs by failing to provide or refusing to provide Plaintiff a reasonable accommodation despite the inexistence of any undue hardship.

156. Providing Plaintiff a reasonable accommodation would not cause Defendant to incur undue hardship, either financially or otherwise.

157. All allegations set forth herein violate Title VII.

158. As a direct and proximate result of Defendant's actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,001.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

**COUNT VII**
**HOSTILE WORK ENVIRONMENT**
**Violation of the D.C. Human Rights Act**

159. Plaintiff incorporates all preceding and subsequent paragraphs hereto as if fully set forth herein.

160. Plaintiff is a religious person and member of a protected class as intended by the D.C. Human Rights Act.

161. Plaintiff is qualified to perform the essential functions of his job with or without a reasonable accommodation by his employer.

162. Plaintiff is an employee and Defendant is Plaintiff's employer as intended by the D.C. Human Rights Act.

163. Defendant had notice of Plaintiff's religion and sincerely held religious beliefs through actual or constructive knowledge, in that Defendant received Plaintiff's religious accommodation request, reviewed his religious accommodation request, read his religious accommodation request, and disability; and discussed Plaintiff's religious accommodation request amongst other DOE employees and as evidenced by Defendants' communications with Plaintiff concerning his religion and sincerely held religious beliefs.

164. Defendant, with the intent to intimidate, ridicule, and insult Plaintiff, created a hostile and abusive work environment by committing the acts or omissions articulated above, including:

a. Harassing Plaintiff because of his religion;

b. Coercing, intimidating, threatening, and otherwise restricting Plaintiff by prohibiting him from returning to work in a manner akin to the conditions imposed upon non-religious persons;

c. Refusing to accommodate Plaintiff by ordering him to work under conditions vastly different than he had worked for years prior to Defendants learning of his religion and vastly different from the conditions of employment under which non-religious persons were permitted to work;

d. Targeting Plaintiff and attempting to constructively oust him because of his religion;

e. Refusing to allow Plaintiff to obtain a reasonably accommodation for his sincerely held religious beliefs;

f. Refusing to accept, review, or respond to Plaintiff's request for a religious accommodation;

g. Intentionally altering the means by which accommodation requests were submitted by arbitrarily modifying the procedure to seek an accommodation repeatedly and without purpose, other than the purpose of confusing Plaintiff or manufacturing pretext for discriminating against him;

h. Refusing to review, acknowledge, or respond to Plaintiff's request for an accommodation;

i. Threatening Plaintiff with disciplinary action, including termination;

j. Taking disciplinary action against Plaintiff because he engaged in constitutionally protected activity, including filing a complaint for discrimination and exercising his right to free exercise of religion;

k. Forcing Plaintiff to be monitored heavily in the event he contracted COVID-19 while non-religious persons were not monitored; and

l. Substantially altering the terms of Plaintiff's employment by revoking longstanding duties and tasks he always completed and satisfied at or above expectations, including duties and tasks that are necessary and required for career-advancement, such as completion and participation in work-related travel.

165. The aforesaid adverse employment actions occurred because Plaintiff requested an accommodation and engaged in protected activity.

166. All allegations set forth herein violate the D.C. Human Rights Act.

167. As a direct and proximate result of Defendant's actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,001.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT VIII
### HOSTILE WORK ENVIRONMENT
### Violation of Title VII

168. Plaintiff incorporates all preceding and subsequent paragraphs hereto as if fully set forth herein.

169. Plaintiff incorporates all preceding and subsequent paragraphs hereto as if fully set forth herein.

170. Plaintiff is a religious person and member of a protected class as intended by Title VII.

171. Plaintiff is qualified to perform the essential functions of his job with or without a reasonable accommodation by his employer.

172. Plaintiff is an employee and Defendant is Plaintiff's employer as intended by Title VII.

173. Defendant had notice of Plaintiff's religion and sincerely held religious beliefs through actual or constructive knowledge, in that Defendant received Plaintiff's religious accommodation request, reviewed his religious accommodation request, read his religious accommodation request, and disability; and discussed Plaintiff's religious accommodation request amongst other DOE employees and as evidenced by Defendants' communications with Plaintiff concerning his religion and sincerely held religious beliefs.

174. Defendant, with the intent to intimidate, ridicule, and insult Plaintiff, created a hostile and abusive work environment by committing the acts or omissions articulated above, including:

a. Harassing Plaintiff because of his religion;
b. Coercing, intimidating, threatening, and otherwise restricting Plaintiff by prohibiting him from returning to work in a manner akin to the conditions imposed upon non-religious persons;
c. Refusing to accommodate Plaintiff by ordering him to work under conditions vastly different than he had worked for years prior to Defendants learning of his religion and vastly different from the conditions of employment under which non-religious persons were permitted to work;
d. Targeting Plaintiff and attempting to constructively oust him because of his religion;

e. Refusing to allow Plaintiff to obtain a reasonably accommodation for his sincerely held religious beliefs;

f. Refusing to accept, review, or respond to Plaintiff's request for a religious accommodation;

g. Intentionally altering the means by which accommodation requests were submitted by arbitrarily modifying the procedure to seek an accommodation repeatedly and without purpose, other than the purpose of confusing Plaintiff or manufacturing pretext for discriminating against him;

h. Refusing to review, acknowledge, or respond to Plaintiff's request for an accommodation;

i. Threatening Plaintiff with disciplinary action, including termination;

j. Taking disciplinary action against Plaintiff because he engaged in constitutionally protected activity, including filing a complaint for discrimination and exercising his right to free exercise of religion;

k. Forcing Plaintiff to be monitored heavily in the event he contracted COVID-19 while non-religious persons were not monitored; and

l. Substantially altering the terms of Plaintiff's employment by revoking longstanding duties and tasks he always completed and satisfied at or above expectations, including duties and tasks that are necessary and required for career-advancement, such as completion and participation in work-related travel.

175. The aforesaid adverse employment actions occurred because Plaintiff requested an accommodation and engaged in protected activity.

176. All allegations set forth herein violate Title VII.

177. As a direct and proximate result of Defendant's actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,001.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

**COUNT IX**
**RETALIATION**
**Violation of the D.C. Human Rights Act**

178. Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

179. Defendant engaged in systemic retaliation against Plaintiff because he protested, opposed, and/or spoke out against Defendants' discrimination based on Plaintiff's religion and engagement in protected activity, including without limitation, the filing of a complaint concerning the discrimination Defendants took against him.

180. Defendant's aforesaid retaliatory action was intentional, deliberate, willful, and conducted in callous disregard of Plaintiff's rights.

181. In retaliation for engaging in protected activity, Defendant subjected Plaintiff to adverse employment action as articulated above.

182. Defendant's retaliation against Plaintiff as a result of his opposition to the aforesaid disability discrimination and engagement in protected activity violates the D.C. Human Rights Act.

183. As a direct and proximate result of Defendant's retaliation, Plaintiff sustained economic injuries in amount in excess of $75,001.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

**COUNT X**

**RETALIATION**
**Violation of Title VII**

184. Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

185. Defendant engaged in systemic retaliation against Plaintiff because he protested, opposed, and/or spoke out against Defendant's disability discrimination.

186. Defendant's aforesaid retaliatory action was intentional, deliberate, willful, and conducted in callous disregard of Plaintiff's rights.

187. In retaliation for engaging in protected activity, Defendant subjected Plaintiff to adverse employment action as articulated above.

188. Defendant's retaliation against Plaintiff as a result of his opposition to the aforesaid religious-based discrimination and engagement in protected activity violates Title VII.

189. As a direct and proximate result of Defendant's retaliation, Plaintiff sustained economic injuries in amount in excess of $75,001.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT XI
**VIOLATION OF EQUAL PROTECTION**
**U.S. Const. amend. V**

190. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

191. The vaccine mandate required Plaintiff to become vaccinated against COVID-19.

192. Plaintiff could not become vaccinated as doing so runs afoul to his sincerely held religious beliefs.

193. The vaccine mandate, states that exceptions will be made for *inter alia* sincerely held religious beliefs and medical reasons.

194. To the extent the vaccine mandate appeared to be facially neutral and in compliance with well-established legal principles, its application and the manner in which the vaccine mandate was promulgated was not neutral. To the contrary, the vaccine mandate was discriminatorily enforced against religious persons, such as Plaintiff.

195. The vaccine mandate deprives Plaintiff of his ability to freely exercise his religion and because his sincerely held religious beliefs prohibit his compliance with the DOE's vaccine mandate.

196. Because of his sincerely held religious beliefs, Plaintiff has suffered, and continues to suffer, significant stress and psychological harm caused by the incessant harassment, ostracization, and disparate treatment he suffers because of his religion.

197. Directly and proximately because of his sincerely held religious beliefs, Plaintiff has suffered, and continues to suffer, a deprivation of his constitutional rights because of Defendants continue to enforce the substantial changes to the above-mentioned terms and conditions of his employment applicable to Plaintiff only because he is religious.

198. Defendants continue to deprive Plaintiff of his fundamental right to free exercise by refusing to allow him to work in an environment free of discrimination based on his religion, and because Defendants continue to harass him because he is a religious man.

199. Plaintiff, because of his sincerely held religious beliefs, is also immediately injured by the stigma created by the vaccine mandate. The only persons who are subjected to the changed terms and conditions of employment and subject to discipline are those who are religious. Plaintiff, because he is religious and Defendants learned that he is religious, is now forced to work in an environment where his employer has repeatedly and publicly proclaimed their aversion to his

religion, implicitly or explicitly made it known that Plaintiff's religion is unwanted and unwelcome, and that his religion is not respected. Any religious employee who works for Defendants is treated, viewed, and considered to be a person with second-class status while non-religious persons get preferential treatment void of any substantial changes in the terms and conditions of their employment.

200. Plaintiff is entitled to a religious accommodation and to the protections guaranteed under the equal protection of law and he is entitled to be treated equal to other DOE employees who are not religious.

201. The vaccine mandate singles out Plaintiff based upon his religion.

202. The vaccine mandate singles out Plaintiff based upon his sincerely held religious beliefs.

203. As a result of being singled out by Defendants, Plaintiff and other religious DOE employees have been subjected different treatment.

204. The different treatment to which Plaintiff and other religious DOE employees have been subjected and continue to be subjected is arbitrary and achieves no legitimate or compelling policy interest.

205. The different treatment to which Plaintiff and other religious DOE employees are subjected is capricious as their religion bears no impact on the contraction or transmission of COVID-19.

206. The vaccine mandate discriminates against Plaintiff and other religious DOE employees because of their religion.

207. The vaccine mandate puts fundamental rights at issue and therefore, it is subject to strict scrutiny.

208. Defendants' actions of adopting, implementing, promulgating, delegating, and enforcing the vaccine mandate have discriminated and continue to discriminate against Plaintiff and other religious DOE employees on the basis of religion and such actions do not survive strict scrutiny as the differential and disparate treatment satisfies no legitimate or compelling policy interest or objective.

209. Defendants' actions of adopting, implementing, promulgating, delegating, and enforcing the vaccine mandate have discriminated and continue to discriminate against Plaintiff and other religious DOE employees on the basis of their sincerely held religious beliefs, and such actions do not survive strict scrutiny as the differential and disparate treatment satisfies no legitimate or compelling policy interest or objective.

210. Defendants' actions of adopting, implementing, promulgating, delegating, and enforcing the Vaccine Mandates have discriminated and continue to discriminate against Plaintiffs and other service members, federal employees, and federal contractors on the basis of invidious stereotypes, irrational fears, and moral disapproval, which are not permissible bases for differential treatment under any standard of review.

211. As a direct and proximate result of the above, Plaintiff seeks and is entitled to declaratory and injunctive relief because he does not have any adequate remedy at law to prevent future injury caused by Defendants' violation of his right to equal protection.

## COUNT XII
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### District of Columbia Common Law

212. Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

213. Defendant engaged in extreme and outrageous conduct by:

a. Harassing Plaintiff because of his religion;

b. Coercing, intimidating, threatening, and otherwise restricting Plaintiff by prohibiting him from returning to work in a manner akin to the conditions imposed upon non-religious persons;

c. Refusing to accommodate Plaintiff by ordering him to work under conditions vastly different than he had worked for years prior to Defendants learning of his religion and vastly different from the conditions of employment under which non-religious persons were permitted to work;

d. Targeting Plaintiff and attempting to constructively oust him because of his religion;

e. Refusing to allow Plaintiff to obtain a reasonably accommodation for his sincerely held religious beliefs;

f. Refusing to accept, review, or respond to Plaintiff's request for a religious accommodation;

g. Intentionally altering the means by which accommodation requests were submitted by arbitrarily modifying the procedure to seek an accommodation repeatedly and without purpose, other than the purpose of confusing Plaintiff or manufacturing pretext for discriminating against him;

h. Refusing to review, acknowledge, or respond to Plaintiff's request for an accommodation;

i. Threatening Plaintiff with disciplinary action, including termination;

j. Taking disciplinary action against Plaintiff because he engaged in constitutionally protected activity, including filing a complaint for discrimination and exercising his right to free exercise of religion;

k. Forcing Plaintiff to be monitored heavily in the event he contracted COVID-19 while non-religious persons were not monitored; and

l. Substantially altering the terms of Plaintiff's employment by revoking longstanding duties and tasks he always completed and satisfied at or above expectations, including duties and tasks that are necessary and required for career-advancement, such as completion and participation in work-related travel.

214. As a direct and proximate result of Defendant's aforesaid intentional or reckless conduct, Plaintiff suffered extreme emotional distress resulting in physical manifestations of symptoms including but not limited to, loss of sleep, weight gain, upset stomach and related abdominal pain, and loss of appetite, sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

**ATTORNEY'S FEES**

Plaintiff is entitled to an award of attorney's fees and reimbursement of the costs and expenses incurred in relation to prosecuting this action pursuant to Title VII, 42 U.S.C. § 2000e-5(k) as well as other applicable statutory provisions under which this action is brought.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment in Plaintiff's favor, and award Plaintiff such relief as to make Plaintiff whole and remedy the aforesaid violations; and hold Defendant liable and in doing so, award all legal and equitable relief provided by law, including but not limited to:

a. Declaratory relief finding Defendants' actions in discriminating against Plaintiff because of his religion are unconstitutional;

b. Declaratory relief finding Defendants' refusal to accommodate Plaintiff's sincerely held religious beliefs during the pendency in which Plaintiff was subjected to a vaccine mandate is unconstitutional;

c. Declaratory relief finding Defendants' refusal to respond to Plaintiff's request for a reasonable accommodation based on his sincerely held religious beliefs is unconstitutional;

d. Injunctive relief that, to the extent a vaccine mandate presently exists, compels Defendants to respond to Plaintiff's religious accommodation request within 14 days;

e. Injunctive relief that, to the extent a vaccine mandate does not presently exist, prohibits Defendants from ignoring Plaintiff's religious accommodation request;

f. Compensatory damages in the amount of $500,000;

g. An award of reasonable attorney's fees and litigation costs; and

h. Any such other relief this Honorable Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 29, 2023

Respectfully submitted,

/S/ MICHAEL A. YODER
Michael A. Yoder
LAW OFFICE OF MICHAEL A. YODER, PLLC
2300 Wilson Blvd., Suite 700
Arlington, VA 22201
Tel: (202) 595-4504
Fax: (571) 327-5554
michael@yoderesq.com

*Counsel for Plaintiff*