UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARC DESMARAIS,<br><br>        *Plaintiff*,<br><br>v.<br><br>JENNIFER M. GRANHOLM, *et al.*,<br><br>        *Defendants*. | Civil Action No. 23-1541 (LLA) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Marc Desmarais brings this employment discrimination action against the United States Department of Energy ("DOE"), Secretary of Energy Jennifer M. Granholm, and DOE employees Jennifer Rodgers and Tarak Shah (collectively, "Defendants"). ECF No. 1. Defendants move to dismiss. ECF No. 13. For the reasons explained below, the court grants in part and denies in part Defendants' motion.

### I. Factual Background

In resolving Defendants' motion to dismiss, the court accepts the following factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Marc Desmarais works as a Power System Dispatcher Supervisor for the Department of Energy's Western Area Power Administration ("WAPA"). ECF No. 1 ¶ 3. On September 9, 2021, President Joseph R. Biden issued Executive Order ("EO") 14043 requiring all federal employees, like Mr. Desmarais, to receive the COVID-19 vaccine. *Id.* ¶¶ 19, 38. On September 14, 2021, Mr. Desmarais submitted a request for a religious accommodation, explaining that getting vaccinated would violate his sincerely held religious beliefs. *Id.* ¶¶ 39-42. Mr. Desmarais "is a Christian and decisions made pursuant to his Catholic-based faith hinge upon a well-formed

conscience," and "[a]s a Christian, [his] well-formed conscience leads him to sincerely believe he cannot inject unknown vaccines into his body." *Id.* ¶ 40. Further, Mr. Desmarais "sincerely believes his body is not to be altered in any way other than through means by which God created or through scientifically proven, safe, and effective necessary medical intervention. To consume or knowingly inject anything else into his body would constitute a sin." *Id.* ¶ 41. Mr. Desmarais also believes that "abortion is a sin and because each and every COVID-19 vaccine available at all times relevant was . . . created through the use of aborted fetal cell line tissues, [he] was prohibited from injecting into his body a product that but-for abortion, would not exist." *Id.* ¶ 42.

On December 27, 2021, Defendants told Mr. Desmarais that his reasonable accommodation request "would be processed in a 'specific order,'" pursuant to which "Defendants refused to respond to religious accommodation requests and only focused on medical accommodation requests." *Id.* ¶ 50.

On December 29, 2021, WAPA Senior Vice President and Chief Administrative Officer Jennifer Rodgers emailed all WAPA employees urging them to "[g]et vaccinated" and "get your kids vaccinated." ECF No. 13-10 (Defs. Ex. I), at 2; ECF No. 1 ¶ 51. Mr. Desmarais replied to Ms. Rodgers the next day, passing along a complaint from an employee. ECF No. 13-10 (Defs. Ex. I), at 1. Ms. Rodgers responded, stating, "I understand there is a lot of emotion around these topics and as part of the Federal government our official message has to align with that of our leadership which is 'get vaccinated.'" *Id.*; ECF No. 1 ¶ 51.

On January 13, 2022, DOE Chief of Staff Tarak Shah sent an agency-wide email about DOE's COVID-19 policies. ECF No. 13-11 (Defs. Ex. J). Mr. Desmarais alleges that, in this email, "Defendants told [Mr. Desmarais] that '[e]veryone else has taken steps to protect [the] DOE community . . . [and] most of us have done everything right over the past two years.'" ECF No. 1

¶ 53. Mr. Desmarais interpreted this as "blaming [him] for the pandemic" and "telling [him] he was 'wrong' for exercising his right to Free Exercise." *Id.* That communication "ended with Defendants directing [Mr. Desmarais] to re-read the DOE's stance that demands he become vaccinated against his religious beliefs." *Id.*

On January 24, 2022, a federal court enjoined EO 14043's vaccine mandate. *Id.* ¶ 54. Mr. Desmarais was "relieved to learn" that he was no longer obligated to become vaccinated. *Id.* DOE affirmed that, in light of the nationwide injunction, it would take no action to enforce EO 14043's vaccine requirement. *Id.* ¶ 56. The injunction remained in effect until President Biden revoked the Executive Order on May 12, 2023. ECF No. 13-1, at 5.

Mr. Desmarais alleges that, in March 2022, Defendants instituted a "policy demand[ing] religious persons submit to arbitrary COVID-19 testing on a weekly basis, regardless of whether they have naturally acquired immunity or not." *Id.* ¶ 60. Further, "Defendants threatened [Mr. Desmarais] by advising him that failure to violate his religious beliefs or refusal to comply with the DOE's arbitrary weekly testing policy would result in disciplinary action taken against him." *Id.* ¶ 62.

On March 29, 2022, "[Mr. Desmarais] received a notification that he was not allowed to travel to Phoenix, Arizona, to attend the semi-annual RMR Operations supervisors' meeting in person." *Id.* ¶ 65. He alleges that "[t]he sole reason [he] was not permitted to attend the meeting was because of his religion and his sincerely held religious beliefs." *Id.*

Mr. Desmarais claims that DOE instituted different return-to-work testing policies for religious and non-religious employees. *Id.* ¶ 67. Non-religious employees who contracted COVID were able to return to work "so long as they 'swore' they had tested negative for COVID-19." *Id.* ¶¶ 68, 73-74. Religious employees "had to test in front of a proctor and on video." *Id.* ¶ 71.

Bargaining unit employees did not have to test when their county's COVID-19 levels reached "Medium." *Id.* ¶ 70.  (Mr. Desmarais is a non-bargaining unit employee. *Id.*)  On May 23, 2022, WAPA Administrative Officer Kellie Petty informed Mr. Desmarais "that he, as a religious employee, was required to test for COVID-19 . . . but non-religious employees had no such requirement." *Id.* ¶ 69.

On June 1, 2022, Mr. Desmarais learned that vaccinated employees who attended WAPA's leadership summit were not required to take a COVID test. *Id.* ¶ 72.  Mr. Desmarais "asserted that WAPA's decision to have two sets of testing standards for vaccinated and unvaccinated employees alienated staff based on their religious beliefs or medical status." *Id.*

## II.   Procedural History

Mr. Desmarais filed this suit in May 2023.  ECF No. 1.  He initially sued Secretary Granholm in her official capacity and Ms. Rodgers and Mr. Shah in both their official and individual capacities, *see id.*, but he later dismissed his individual-capacity claims, *see* ECF No. 16, at i n.1.  In his complaint, Mr. Desmarais alleges violations of Title VII, 42 U.S.C. § 2000e *et seq.*; the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq.*; the D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq.*; the Fifth Amendment; and District of Columbia common law.  ECF No. 1 ¶¶ 88-214.  After Defendants moved to dismiss, Mr. Desmarais voluntarily dismissed all but three Title VII claims which remain before the court: religious discrimination (Count I), disparate treatment (Count IV), and failure to accommodate (Count VI). *See* ECF No. 16, at 6; ECF No. 1 ¶¶ 88-106, 133-40, 150-58.

In their motion to dismiss, Defendants seek dismissal of Mr. Desmarais's Title VII claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  ECF No. 13, at 23-36.

Mr. Desmarais filed an opposition, ECF No. 16, and Defendants filed a reply, ECF No. 17.  The motion is now ripe for decision.

### III.   Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the plaintiff pleads facts that are more than "'merely consistent with' a defendant's liability" and that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 557); *see Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) ("Plausibility requires 'more than a sheer possibility that a defendant has acted unlawfully.'" (quoting *Iqbal*, 556 U.S. at 678)).  "A complaint survives a motion to dismiss even '[i]f there are two alternative explanations, one advanced by [the] defendant and the other advanced by [the] plaintiff, both of which are plausible.'"  *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

In deciding a motion under Rule 12(b)(6), a court must consider the whole complaint, accepting all factual allegations in the complaint as true, "even if doubtful in fact," and construing all reasonable inferences in the plaintiff's favor.  *Twombly*, 550 U.S. at 555; *see Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 210 (D.C. Cir. 2022).  However, a court need not "accept inferences drawn by [a] plaintiff[] if such inferences are unsupported by the facts set out in the complaint."  *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)); *see Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  In determining whether a complaint fails to state a claim, a court may consider only

the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

### IV.     Discussion

Mr. Desmarais alleges that Defendants violated Title VII by failing to provide a religious accommodation and subjecting him to disparate treatment because of his religion.[1] The court first addresses whether Defendants' exhibits are properly before the court and then turns to Mr. Desmarais's claims.

#### A.     Defendants' Exhibits

Defendants attach various exhibits to their motion to dismiss. *See* ECF No. 13. The court may consider such exhibits without converting the motion to dismiss into one for summary judgment if they are incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Banneker Ventures, LLC*, 798 F.3d at 1133. "Incorporation by reference can . . . amplify pleadings where the document is not attached by the plaintiff, but is 'referred to in the complaint and [ ] integral to [the plaintiff's] claim.'" *Banneker Ventures, LLC*, 798 F.3d at 1133 (quoting *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004)). The court therefore considers the following exhibits, which the complaint incorporates by reference or upon which Mr. Desmarais's claims rely: DOE and WAPA's vaccination and return-to-work policies, Defs. Exs. A-C; Mr. Desmarais's requests for reasonable

---

[1] Although Mr. Desmarais also alleges a distinct "religious discrimination" claim (Count I), he agrees with Defendants that "there is no 'religious discrimination' claim as distinct from both a disparate-treatment claim and a failure-to-accommodate claim [under Title VII]." ECF No. 13, at 24 n.9; ECF No. 16, at 6 n.7. The court therefore addresses Mr. Desmarais's religious discrimination allegations together with his disparate-treatment and accommodation claims.

accommodations, Defs. Exs. D & E; Defendants' responses to those requests, Defs. Ex. F; and Defendants' email communications that Mr. Desmarais cites in his complaint, Defs. Exs. H-O. *See* ECF No. 13.

## B. Failure to Accommodate

"Title VII of the Civil Rights Act of 1964 requires employers to accommodate the religious practice of their employees unless doing so would impose an 'undue hardship on the conduct of the employer's business.'" *Groff v. DeJoy*, 600 U.S. 447, 453-54 (2023) (quoting 42 U.S.C. § 2000e(j)). To make out a prima facie failure-to-accommodate claim, a plaintiff must show that "(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement."[2] *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 95 (D.D.C. 2006). "[A]n employment discrimination plaintiff is not required to plead every fact necessary to establish a *prima facie* case to survive a motion to dismiss," *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011), but he must still "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

Here, the parties do not dispute that Mr. Desmarais's sincerely held religious beliefs conflicted with the vaccine mandate, and that Mr. Desmarais so informed his employer on September 14, 2021. *See* ECF No. 13-1, at 6. The problem is the third prong: he was never subject

---

[2] While "[n]either the Supreme Court nor the D.C. Circuit have articulated a framework under Title VII for an alleged failure to accommodate an employee's religious beliefs," *Dixon v. Yellen*, No. 22-CV-3496, 2024 WL 1831967, at *4 (D.D.C. Mar. 21, 2024), the D.C. Circuit has "indicated its approval" of this three-part framework used by several other circuits, *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 95 n.22 (D.D.C. 2006).

to any discipline for failure to comply with the vaccine mandate. Mr. Desmarais submitted a religious accommodation request, which remained pending with DOE from September 14, 2021 onward. *See id.* at 19; ECF No. 1 ¶ 39. Defendants explain—and Mr. Desmarais does not dispute—that while his religious accommodation request was pending, he was exempt from the vaccination policy and could not be disciplined for failure to comply. *See* ECF No. 13-1, at 3; ECF No. 16, at 11-13. And EO 14043's vaccine mandate was effectively null from late January 2022 onward—first because it was enjoined by a federal court, ECF No. 1 ¶ 54, and ultimately because President Biden revoked the Executive Order on May 12, 2023, ECF No. 13-1, at 5. Mr. Desmarais could not have been disciplined for failing to comply with the vaccination requirement, because he was never in fact subject to the vaccination requirement.

Mr. Desmarais does not dispute this. *See* ECF No. 16, at 11-13. Instead, he argues that Defendants violated Title VII by failing to respond to his accommodation request "[f]or at least 120 days." *Id.* at 12 (emphasis omitted). Mr. Desmarais alleges that, during this period, he feared he would be fired if his request was denied and suffered "mental anguish, pain, and stress associated with being ignored for months on end." *Id.* While Mr. Desmarais found DOE's delay distressing, it cannot change the fact that he was never subject to discipline for failing to comply with the vaccine mandate. *See Lemmons*, 431 F. Supp. 2d at 95. The court therefore concludes that this allegation is better addressed as part of Mr. Desmarais's disparate-treatment claim, not as a failure-to-accommodate claim, and will dismiss Count VI of the complaint.

### C. Disparate Treatment

Title VII makes it unlawful for an employer to discriminate against an employee with respect to their "compensation, terms, conditions, or privileges of employment" because of their "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To prevail on a Title VII employment discrimination claim, a plaintiff must show that "(1) []he is a member of a protected

8

class; (2) []he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Wiley v. Glassman*, 511 F.3d 151, 156 (D.C. Cir. 2007) (quoting *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999)). As noted above, "an employment discrimination plaintiff is not required to plead every fact necessary to establish a *prima facie* case to survive a motion to dismiss," *Jones*, 642 F.3d at 1104, but he must still "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Harris*, 791 F.3d at 68 (quoting *Iqbal*, 556 U.S. at 678).

The Supreme Court recently clarified the standard for an actionable adverse employment action in *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024). There, the Court explained that a plaintiff must simply allege "some harm" regarding the terms or conditions of his employment to support a disparate-treatment claim. *Id.* at 972. That holding is largely consistent with the D.C. Circuit's recent en banc decision in *Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022) (en banc), in which the Circuit held that a plaintiff need only show some change with respect to the terms and conditions of employment (as opposed to an "objectively tangible harm") to plead an adverse action.[3] *Id.* at 874-75. Although the parties briefed this case before *Muldrow* was decided, it applies. *See Thorpe v. Hous. Auth. of Durham*, 393 U.S. 268, 281 (1969) (explaining that courts must apply the law in effect at the time of decision); *see also Overseas Shipholding Grp., Inc. v. Skinner*, 767 F. Supp. 287, 291 (D.D.C. 1991) ("[T]he Court must review the agency's decision under the lens of current legal precedent.").

---

[3] *See Muldrow*, 144 S. Ct. at 979-80 (Kavanaugh, J., concurring) ("As I see it and as the D.C. Circuit saw it [in *Chambers*]," "[t]he discrimination is harm. The only question then is whether the relevant employment action changes the compensation, terms, conditions, or privileges of employment. . . . I expect that the [majority's] approach and my preferred approach will land in the same place and lead to the same result.").

The crux of Mr. Desmarais's claim is that DOE learned that he was Christian when he submitted his religious accommodation request, and the agency then began discriminating against him because of his religion.  *See* ECF No. 1 ¶¶ 30-31.  Mr. Desmarais alleges that Defendants discriminated against him by (1) deprioritizing his religious accommodation request, (2) prohibiting him from traveling to Arizona for work, (3) subjecting him to COVID-19 vaccination, testing, and masking policies, and (4) sending emails about those vaccination policies.  *See* ECF No. 16, at 9-10; ECF No. 13-1, at 29.  Defendants argue that Mr. Desmarais has failed to plausibly allege either an adverse employment action or a causal connection between any adverse action and his religious beliefs.  *See* ECF No. 13-1, at 24-29.  As explained below, the court concludes that Mr. Desmarais has plausibly alleged that Defendants engaged in religious discrimination by deprioritizing his accommodation request.  However, he has failed to plausibly allege that Defendants discriminated against him by canceling his trip to Arizona, subjecting him to various COVID-related policies, or communicating with him about those policies.

### 1. Failure to timely respond to religious accommodation request

Mr. Desmarais alleges that DOE "[i]ntentionally alter[ed] the means by which accommodation requests were submitted by arbitrarily modifying the procedure" in order to "confus[e] Plaintiff or manufactur[e] pretext for discriminating against him."  ECF No. 1 ¶¶ 99(g), 137(g).  Drawing all reasonable inferences in Mr. Desmarais's favor, *Iqbal*, 556 U.S. at 678, Mr. Desmarais seems to be referring to Defendants' policy of "process[ing] [accommodation requests] in a 'specific order,'" pursuant to which "Defendants refused to respond to religious accommodation requests and only focused on medical accommodation requests."  ECF No. 1 ¶ 50.  And Mr. Desmarais claims that he was subjected to and harmed by this policy because DOE "ignored" his request for a religious accommodation for at least four months, even as it continued

10

to resolve non-religious accommodation requests. ECF No. 16, at 1-2, 12; *see* ECF No. 13-9 (Defs. Ex. H), at 1.

Essentially, Mr. Desmarais alleges that his accommodation request was sent to the back of the line (or, excluded from the line entirely) because it was a religious accommodation request. The following hypothetical from *Chambers* explains why this alleged practice constitutes an adverse employment action. Imagine "an employer that provides doughnuts every week for employees but hangs a 'whites only' sign over the doughnuts." 35 F.4th at 878. Being subjected to such a blatantly discriminatory workplace policy (even if the policy is doughnut distribution) is itself a harmful condition of employment. *See id.* To hold otherwise "frustrates Title VII's purpose of ending discrimination in the workplace." *Id.* Because Mr. Desmarais has alleged that he was subjected to a practice, instituted by his employer, "that 'treat[s] a person worse' because of [a] protected trait," he has alleged "some harm" to the terms and conditions of his employment sufficient to clear *Muldrow*'s low bar. 144 S. Ct. at 974 (quoting *Bostock v. Clayton Cnty.*, 590 U.S. 644, 658 (2020)).[4]

Mr. Desmarais has also sufficiently alleged that DOE delayed its response because he requested a *religious* accommodation, as opposed to some other kind of accommodation. Mr. Desmarais claims that Defendants told him his request "would be processed in a 'specific order,'" pursuant to which "Defendants refused to respond to religious accommodation requests and only focused on medical accommodation requests." ECF No. 1 ¶ 50. This appears to be a

---

[4] Because the court finds that DOE's decision to "refuse[] to respond to religious accommodation requests and only focus[] on medical accommodation requests," ECF No. 1 ¶ 50, it itself an adverse employment action, the court need not consider whether the resulting four-month delay or emotional distress Mr. Desmarais experienced would independently qualify as adverse employment actions, *see* ECF No. 16, at 9, 11-13. DOE's delay and Mr. Desmarais's emotional distress are relevant to the court's analysis only because they demonstrate that Mr. Desmarais was in fact subject to the discriminatory policy.

reference to an email Ms. Rodgers sent to all WAPA employees, where she laid out the order in which the agency was processing accommodation requests:

> [W]e are currently adjudicating the short-term Medical Reasonable Accommodation requests where the accommodation is a delay to receiving the vaccine. Next, we will begin adjudicating the long-term Medical Reasonable Accommodation requests. Reasonable Accommodation requests based on religious beliefs are still on hold pending guidance from the Office of Management and Budget and the Department of Justice.

*See* ECF No. 13-1, at 7; ECF No. 13-9 (Defs. Ex. H), at 1.

Direct evidence of discrimination gives rise to an inference of discrimination sufficient for a *prima facie* case. *See Townsend v. United States*, 236 F. Supp. 3d 280, 297 (D.D.C. 2017). "A 'statement that itself shows . . . bias in the employment decision' qualifies as direct evidence" of discrimination. *Wilson v. Cox*, 753 F.3d 244, 247 (D.C. Cir. 2014) (quoting *Vatel v. All. of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011)). Ms. Rodgers's email states that religious accommodation requests were treated differently: they were put "on hold," while certain other accommodation requests were not. *See* ECF No. 13-9 (Defs. Ex. H), at 1. Of course, there could well be a legitimate, non-discriminatory reason for such a policy—but that is an inquiry for summary judgment, not for a motion to dismiss. The court therefore concludes that Mr. Desmarais has plausibly alleged a causal connection between his protected characteristic and DOE's decision to put his accommodation request "on hold."

### 2.     Canceled work trip

Mr. Desmarais claims that he "was not allowed to travel to Phoenix, Arizona, to attend the semi-annual RMR Operations supervisors' meeting in person on March 30-31, 2022," solely because of his religious beliefs. ECF No. 1 ¶ 65. He explains that traveling for work "is something he has done throughout the entirety of his employment as travel is a necessary and essential factor in promotional considerations." *Id.* ¶ 63. Because Mr. Desmarais has alleged that he was

"left . . . worse off" by this decision, he has plausibly alleged an adverse employment action. *Muldrow*, 144 S. Ct. at 977.

But Mr. Desmarais has not plausibly alleged that Defendants prohibited him from traveling to Arizona because of his religious beliefs. Mr. Desmarais claims that "[t]he sole reason [he] was not permitted to attend the meeting was because of his religion and his sincerely held religious beliefs," ECF No. 1 ¶ 65, but that is a conclusory assertion that the court need not accept as true, *see Iqbal*, 556 U.S. at 678. Mr. Desmarais's only other argument for causation is that "virtually immediately upon learning [his] religion, DOE began engaging in . . . adverse employment action[s]." ECF No. 16, at 10. "Temporal proximity can . . . support an inference of causation . . . but only where the two events are 'very close' in time." *Woodruff v. Peters*, 482 F.3d 521 (D.C. Cir. 2007) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). While there is no bright-line rule, "the Supreme Court has cited circuit decisions suggesting that in some instances a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation." *Hamilton v. Geithner*, 666 F.3d 1344, 1357-58 (D.C. Cir. 2012). Here, Mr. Desmarais submitted his religious accommodation request on September 14, 2021, and he was informed that he could not travel to Phoenix on March 29, 2022—a gap of more than six months. *See* ECF No. 1 ¶¶ 39, 65. Such a gap is too lengthy to establish a causal link based on temporal proximity alone. *See Hamilton*, 666 F.3d at 1357-58; *see also, e.g.*, *Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 86 (D.D.C. 2013) (finding that a delay of four months could not support an inference of causation); *Wilson v. Mabus*, 65 F. Supp. 3d 127, 133-34 (D.D.C. 2014) (same). Therefore, Mr. Desmarais has failed to plausibly allege that Defendants canceled his trip to Phoenix because of his religious beliefs.

### 3. COVID-19 vaccination, testing, and masking policies

Mr. Desmarais alleges that Defendants "coerced, intimidated, threatened, and otherwise restricted him by prohibiting him from returning to work free of additional restrictions that DOE did not place on non-religious persons," "prohibited [him] from working under conditions he previously worked for years," and "heavily monitored [him] . . . while not monitoring non-religious employees at all." ECF No. 16, at 9. These allegations seem to refer to Defendants' COVID-19 vaccination, testing, and masking policies. *See* ECF No. 13-1, at 28. But, as discussed above, Mr. Desmarais was never in fact subject to DOE's vaccination requirement. *See supra* Part IV.B. Mr. Desmarais has alleged no facts to suggest that the mere existence of this policy, from which he was exempt, negatively impacted the terms or conditions of *his* employment. The same is true of Defendants' testing policy. Mr. Desmarais submitted a request for a reasonable accommodation from the agency's testing policy on February 28, 2022, before the policy went into effect. *See* ECF No. 13-1, at 6; ECF No. 13-6 (Defs. Ex. E). The agency granted him an interim accommodation on March 9, 2022—again, before the policy went into effect—which provided that Mr. Desmarais did not have to comply with the testing policy for unvaccinated employees. *See* ECF No. 13-1, at 6; ECF No. 13-7 (Defs. Ex. F). This interim accommodation "carried forward until . . . the COVID-19 testing policy was discontinued." ECF No. 13-1, at 17. Mr. Desmarais had the opportunity to contest these arguments in his opposition but did not do so. *See generally* ECF No. 16. The court therefore treats those arguments as conceded. *See Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014). Again, while the testing policy may have affected *other* employees' terms or conditions of employment, it did not affect the terms and conditions of Mr. Desmarais's employment because he was exempt.

That leaves Defendants' COVID masking policy. But the court may not consider Mr. Desmarais's argument about Defendants' masking policy because he raises it for the first time

in his opposition. *See* ECF No. 16, at 9 n.8. "It is 'axiomatic' that a party may not amend his complaint through an opposition brief," *Singh v. District of Columbia*, 55 F. Supp. 3d 55, 70 (D.D.C. 2014) (quoting *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 74 n.25 (D.D.C. 2007)).[5]

Because Mr. Desmarais was never subject to DOE's vaccination or testing requirements, and because he failed to challenge DOE's masking policy in his complaint, the court concludes that he suffered no adverse action relating to those policies.

### 4. Emails about COVID-19 policies

Mr. Desmarais alleges that Defendants "harassed him because of his religion." ECF No. 16, at 9; *see* ECF No. 1 ¶¶ 99(a), 102(a). Standing alone, this is a conclusory legal allegation that the court need not accept as true. *See Iqbal*, 556 U.S. at 678. However, drawing all reasonable inferences in Mr. Desmarais's favor, this allegation seems to refer to three communications he received from Ms. Rodgers and Mr. Shah. *See* ECF No. 13-1, at 29. On December 29, 2021, Ms. Rodgers emailed all WAPA employees urging them to "[g]et vaccinated" and "get your kids vaccinated." ECF No. 13-10 (Defs. Ex. I), at 2; ECF No. 1 ¶ 51. Mr. Desmarais replied to Ms. Rodgers the next day, passing along a complaint from an employee. ECF No. 13-10 (Defs. Ex. I), at 1. Ms. Rodgers responded, stating, "I understand there is a lot of emotion around these topics and as part of the Federal government our official message has to align with that of our leadership which is 'get vaccinated.'" *Id.*; ECF No. 1 ¶ 51. On January 13, 2022, Mr. Shah sent an agency-wide email about DOE's COVID-19 policies. ECF No. 13-11 (Defs. Ex. J). Mr. Desmarais alleges that, in this email, "Defendants told [Mr. Desmarais] that '[e]veryone else

---

[5] And even if Mr. Desmarais had properly raised the masking policy, it appears he was exempt from that policy as well. *See* ECF No. 17, at 6; ECF No. 17-2 (Defs. Ex. B), at 1 (granting interim reasonable accommodation from COVID masking requirement).

has taken steps to protect [the] DOE community . . . [and] most of us have done everything right over the past two years,'" and "direct[ed] [Mr. Desmarais] to re-read the DOE's stance that demands he become vaccinated against his religious beliefs." ECF No. 1 ¶ 53.

It is hard to imagine how receiving two agency- or division-wide emails about a policy from which Mr. Desmarais was exempt could be adverse employment actions. But even assuming that they are, Mr. Desmarais has not plausibly alleged that Defendants sent the emails because of his religious beliefs. *See Anderson v. CloudHQ LLC*, No. 24-CV-916, 2024 WL 2152464, at *2 (D.D.C. May 14, 2024) (dismissing Title VII claim because the plaintiff's "allegations d[id] not support a plausible inference of discriminatory intent" without deciding whether she had alleged an adverse employment action). Both Ms. Rodgers's initial December 2021 email and Mr. Shah's January 2022 email were agency- or division-wide emails announcing or reiterating DOE policy (from which Mr. Desmarais was exempt). *See* ECF No. 13-9 (Defs. Ex. H); ECF No. 13-11 (Defs. Ex. J). These communications did not target Mr. Desmarais or religious employees—rather, they were sent to *all* employees. Defendants encouraged unvaccinated employees to get vaccinated but made no distinction between employees who were unvaccinated for religious reasons versus for some other reason. *See* ECF No. 13-9 (Defs. Ex. H); ECF No. 13-11 (Defs. Ex. J). Take, for example, this statement by Mr. Shah: "For the very small fraction of you who aren't vaccinated . . . it's time. . . . Everyone else has taken steps to protect our DOE community and now I urge you to follow the science and step up to the plate too." ECF No. 13-11 (Defs. Ex. J), at 1. Such a statement would apply to employees who remained unvaccinated for any reason—because of their religious beliefs, because of a medical condition, or because they simply did not want to get vaccinated.

This leaves one email that Ms. Rodgers sent directly to Mr. Desmarais. *See* ECF No. 13-10 (Defs. Ex. I), at 1. After Ms. Rodgers sent her initial division-wide email to all WAPA employees, Mr. Desmarais replied:

> I'm starting to get complaints in about these emails again. So, I'm just passing this along from the employee standpoint.
>
> First off, the employee does not think that WAPA/DOE should be giving guidance on whether to get your kids vaccinated or not. This is an overreach of whomever is writing these emails. In situations like this it is best for us to keep our opinions to ourselves and keep focus on the employee (not their family).

*Id.* Not only does Mr. Desmarais's email make no mention of religion (only general "overreach"), it seems to relay a complaint raised by another employee—not by Mr. Desmarais. *See id.* And Ms. Rodgers's response was similarly religion-neutral: "I understand there is a lot of emotion around these topics and as part of the Federal government our official message has to align with that of our leadership which is 'get vaccinated.'" *Id.* This reiteration of the agency's facially neutral policy—in response to concerns raised by other employees, not raised by Mr. Desmarais—cannot plausibly be construed as evidence of religious discrimination.

Mr. Desmarais argues generally that, "virtually immediately upon learning [his] religion, DOE began engaging in . . . adverse employment action[s]." ECF No. 16, at 10. But a temporal proximity theory is a poor fit here, where the communications were not targeted at or about Mr. Desmarais. As explained, two of the three emails in question were facially neutral mass communications. It would be illogical to infer that Defendants sent emails to the entire agency or division because they had learned about the religious beliefs of one employee, Mr. Desmarais, three months earlier. Similarly, it would be illogical to infer that Ms. Rodgers reiterated WAPA's stance on vaccination to Mr. Desmarais, in response to concerns raised by *other* employees, because she had learned about Mr. Desmarais's religious beliefs three months earlier. Courts must

"evaluate[] the specific facts of each case to determine whether inferring causation [from temporal proximity] is appropriate"—and here, it is not. *Hamilton*, 666 F.3d at 1358.

In sum, even if the emails in question amounted to harassment that altered the terms or conditions of his employment, Mr. Desmarais has not plausibly alleged a causal connection between those emails and his religious beliefs.

## V.     Conclusion

For the foregoing reasons, Official-Capacity Defendants' Motion to Dismiss, ECF No. 13, is hereby **DENIED** as to Count IV, because Mr. Desmarais has plausibly alleged that Defendants engaged in discrimination by deprioritizing his request for a religious accommodation. Defendants' motion is otherwise **GRANTED**. Defendants shall file an answer on or before August 30, 2024.

**SO ORDERED**.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date: August 16, 2024