UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARC DESMARAIS,

    *Plaintiff*,

v.

CHRISTOPHER A. WRIGHT, *et al.*,

    *Defendants*.

Civil Action No. 23 - 1541 (LLA)

**MEMORANDUM OPINION AND ORDER**

    Plaintiff Marc Desmarais filed this employment discrimination action against the United States Department of Energy ("DOE"), Secretary of Energy Christopher A. Wright, and DOE employees Jennifer Rodgers and Carl Coe (collectively, "Defendants").[1] ECF No. 1. In August 2024, the court granted in part Defendants' motion to dismiss Mr. Desmarais's claims alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, and denied the motion as to one count of religious discrimination. ECF No. 18. Defendants have filed a motion for judgment on the pleadings as to the remaining claim, in which Mr. Desmarais alleges that Defendants deprioritized his request for a religious accommodation. ECF No. 28. For the reasons explained below, the court denies Defendants' motion.

---

[1] Mr. Desmarais named former Secretary of Energy Jennifer M. Granholm and former DOE Chief of Staff Tarak Shah as Defendants, but Secretary Wright and Mr. Coe are "automatically substituted" as parties pursuant to Federal Rule of Civil Procedure 25(d).

## I.   FACTUAL BACKGROUND

In resolving Defendants' motion for judgment on the pleadings, the court will assume that the facts alleged in Mr. Desmarais's complaint are true. *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1370 (D.C. Cir. 2008); *Murphy v. Dep't of Air Force*, 326 F.R.D. 47, 49 (D.D.C. 2018).

Marc Desmarais works as a Power System Dispatcher Supervisor for the Department of Energy's Western Area Power Administration. ECF No. 1 ¶ 3. On September 9, 2021, President Joseph R. Biden issued Executive Order ("EO") 14043 requiring all federal employees, like Mr. Desmarais, to receive the COVID-19 vaccine. *Id.* ¶¶ 19, 38. Shortly thereafter, Mr. Desmarais submitted a request for a religious accommodation, explaining that getting vaccinated would violate his sincerely held religious beliefs. *Id.* ¶¶ 39-42. Mr. Desmarais "is a Christian and decisions made pursuant to his Catholic-based faith hinge upon a well-formed conscience," and "[a]s a Christian, [his] well-formed conscience leads him to sincerely believe he cannot inject unknown vaccines into his body." *Id.* ¶ 40. Further, Mr. Desmarais "sincerely believes his body is not to be altered in any way other than through means by which God created or through scientifically proven, safe, and effective necessary medical intervention. To consume or knowingly inject anything else into his body would constitute a sin." *Id.* ¶ 41. Mr. Desmarais also believes that "abortion is a sin and because each and every COVID-19 vaccine available at all times relevant was . . . created through the use of aborted fetal cell line tissues, [he] was prohibited from injecting into his body a product that but-for abortion, would not exist." *Id.* ¶ 42.

On December 27, 2021, Defendants told Mr. Desmarais that his request for a reasonable accommodation "would be processed in a 'specific order,'" pursuant to which "Defendants refused to respond to religious accommodation requests and only focused on medical accommodation

2

requests." *Id.* ¶ 50. On January 24, 2022, a federal court enjoined EO 14043's vaccine mandate. *Id.* ¶ 54. Mr. Desmarais was "relieved to learn" that he was no longer obligated to become vaccinated. *Id.* DOE confirmed that, in light of the nationwide injunction, it would take no action to enforce EO 14043's vaccine requirement. *Id.* ¶ 56. The injunction remained in effect until President Biden revoked the Executive Order on May 12, 2023. ECF No. 13-1, at 5.

## II.   PROCEDURAL HISTORY

Mr. Desmarais filed this suit in May 2023. ECF No. 1. After Defendants filed a motion to dismiss, ECF No. 13, Mr. Desmaris voluntarily dismissed some of his claims, ECF No. 16, at i n.1, 6, leaving only his claims against Defendants in their official capacities alleging disparate treatment on the basis of religion (Counts I and IV), ECF No. 1 ¶¶ 88-106, 133-140, *see* ECF No. 18 at 6 n.1; and failure to accommodate on the basis of religion (Count VI), ECF No. 1 ¶¶ 150-158.

In August 2024, the court concluded that Mr. Desmarais had plausibly alleged that Defendants engaged in religious discrimination by deprioritizing his accommodation request and allowed Count IV to proceed, ECF No. 18, at 10-12, but it dismissed Counts I and VI, *id.* at 7-8, 18. In April 2025, Defendants filed a motion for judgment on the pleadings on Count IV pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 28. The motion is fully briefed. ECF Nos. 28, 30, 31.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Such a motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the

merits can be rendered by looking at the substance of the pleadings and any judicially noted facts." *Tapp v. Wash. Metro. Area Transit Auth.*, 306 F. Supp. 3d 383, 391 (D.D.C. 2016) (quoting *All. of Artists & Recording Cos. v. Gen. Motors Co.*, 162 F. Supp. 3d 8, 16 (D.D.C. 2016)). "Because Rule 12(c) provides judicial resolution at an early stage of a case, the party seeking judgment on the pleadings shoulders a heavy burden of justification." *Dist. No. 1 v. Liberty Mar. Corp.*, 933 F.3d 751, 760 (D.C. Cir. 2019). Unlike a motion to dismiss under Rule 12(b)(6), which requires "the mere determination that the plaintiff's complaint is too deficient to proceed," a party filing a motion under Rule 12(c) "must demonstrate that the law entitles him to win given the undisputed facts that have been alleged in both parties' pleadings." *Murphy*, 326 F.R.D. at 49.

In considering a Rule 12(c) motion, "the court relies on 'the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice.'" *Tapp*, 306 F. Supp. 3d at 392 (quoting *Allen v. U.S. Dep't of Educ.*, 755 F. Supp. 2d 122, 125 (D.D.C. 2010)). "[A]ll of the well pleaded factual allegations in the adversary's pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." *Id.* (quoting 5C Charles Alan Wright, et al., *Federal Practice and Procedure* § 1368 (3d ed. 2004)). But the court need not accept factual allegations in the complaint as true "insofar as they contradict . . . matters subject to judicial notice," *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004), nor is the court "bound to accept the legal conclusions of the non-moving party," *Tapp*, 306 F. Supp. 3d at 392 (quoting *Baumann v. District of Columbia*, 744 F. Supp. 2d 216, 222 (D.D.C. 2010)).

### IV.   DISCUSSION

In their motion for judgment on the pleadings, Defendants contend that Mr. Desmarais has failed to allege that he suffered an adverse employment action based on the deprioritization of his

4

request for a religious accommodation. ECF No. 28. Defendants raise two arguments in support of their motion: (1) that Mr. Desmarais has failed to identify a "personnel action" to support his disparate treatment claim, and (2) that he has failed to identify "some harm" from the deprioritization, as required under *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). ECF No. 28, at 9-17. The court considers each argument in turn.

### A.     Personnel Action

Title VII makes it unlawful for an employer to discriminate against an employee with respect to their "compensation, terms, conditions, or privileges of employment" because of his "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To prevail on a Title VII disparate treatment claim, a plaintiff must show that "(1) []he is a member of a protected class; (2) []he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Wiley v. Glassman*, 511 F.3d 151, 156 (D.C. Cir. 2007) (quoting *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999)).

While Defendants' motion to dismiss was pending, the Supreme Court clarified the standard for an actionable adverse employment action. *See Muldrow*, 601 U.S. at 350. In *Muldrow*, the Court explained that a plaintiff must simply allege "some harm" regarding the terms or conditions of his employment to support a disparate treatment claim. *Id.* That holding is largely consistent with the D.C. Circuit's previous en banc decision in *Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022) (en banc), in which the D.C. Circuit held that a plaintiff need only show some change with respect to the terms and conditions of employment (as opposed to an "objectively tangible harm") to plead an adverse action. *Id.* at 874-75.

Defendants argue that the adverse-action standard articulated in *Chambers* and *Muldrow* does not apply in this case because Mr. Desmarais is covered by the federal-sector provisions of

5

Title VII, whereas the plaintiffs in *Chambers* and *Muldrow* were not. ECF No. 28, at 9-12. In Defendants' view, a federal-sector plaintiff may only bring a claim based on an adverse "personnel action" as defined by the Civil Service Reform Act, 5 U.S.C. § 2302(a)(2)(A). ECF No. 28, at 9-10. The court disagrees. The D.C. Circuit has consistently held that the private- and federal-sector provisions of Title VII should be construed similarly. *See Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007); *Singletary v. District of Columbia*, 351 F.3d 519, 523-24 (D.C. Cir. 2003); *see also Bain v. Off. of the Att'y Gen.*, 648 F. Supp. 3d 19, 53 (D.D.C. 2022) (explaining, post-*Chambers*, that the D.C. Circuit has "long and repeatedly held that the federal-sector provisions [of Title VII] are coterminous with their private-sector counterparts as far as the standard for an adverse action goes"). Moreover, the *Chambers* Court overruled *Brown v. Brody*, 199 F.3d 446 (D.C. Cir. 1999), which itself involved a federal employee, *id.* at 448; *see Chambers*, 35 F.4th at 882. This suggests that the *Chambers* Court intended its interpretation of the adverse-action requirement, as subsequently informed by *Muldrow*, to apply to all Title VII disparate treatment claims, not just those brought by employees in the private sector. *See Chambers*, 35 F.4th at 878-82.

Defendants do not dispute that "D.C. Circuit case law instruct[s] that the federal and non-federal provisions of Title VII are to be interpreted identically." ECF No. 28, at 10. Instead, they argue that the Supreme Court's reasoning in *Babb v. Wilkie*, 589 U.S. 399 (2020), abrogated that D.C. Circuit precedent. *See* ECF No. 28, at 10-12; ECF No. 31, at 3. In *Babb*, the Supreme Court interpreted the federal-sector provision of a different statute, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633(a), holding that "age must be a but-for cause of discrimination—that is, of differential treatment—but not necessarily a but-for cause of a personnel action itself." 589 U.S. at 405-06. The court found that differences in the language of

6

the ADEA's federal and non-federal provisions required a lower standard of causation for proving age discrimination for federal employees than for private-sector employees. *Id.* at 410. From this, Defendants contend that when an anti-discrimination statute uses different language in its federal and non-federal provisions, courts must "give effect to the difference." ECF No. 28, at 11.

The court is not persuaded that *Babb*, a case concerning a different statute, overruled or abrogated D.C. Circuit precedent interpreting Title VII's federal and non-federal provisions in parallel. When the D.C. Circuit decided *Chambers*, two years after *Babb*, "it was certainly aware of the 'usual rule [that] when the legislature uses certain language in one part of the statute and different language in another,' courts should 'assume[] different meanings were intended.'" *Doe v. Austin*, No. 22-CV-3474, 2024 WL 864270, at *10 (D.D.C. Feb. 29, 2024) (internal quotation marks omitted) (quoting *DePierre v. United States*, 564 U.S. 70, 83 (2011)). But nothing in *Chambers* suggests that the D.C. Circuit departed from its longstanding approach to the "identical prohibitions" in Title VII's federal and non-federal provisions. *Czekalski*, 475 F.3d at 363; *see Rhone v. Rubio*, No. 24-CV-3389, 2025 WL 3017791, at *4 (D.D.C. Oct. 28, 2025) ("Absent any contrary directive from the D.C. Circuit, this Court will thus apply *Muldrow* and *Chambers* to [a federal-sector plaintiff's] discrimination claims."); *Bain*, 648 F. Supp. 3d at 54 ("[*Chambers*] did not so much as hint that the private-sector and federal-sector discrimination provisions should no longer be construed alike. If anything, it affirmed the status quo.").

Accordingly, like every other judge in this district to have squarely addressed the argument, the court rejects Defendants' assertion that *Babb* requires federal-sector Title VII plaintiffs to make a different showing than private-sector plaintiffs to establish an adverse employment action. *See, e.g.*, *Wilson v. Noem*, No. 20-CV-100, 2025 WL 1000666, at *21-22 (D.D.C. Apr. 3, 2025) (noting that "*Babb* [was] nothing new" when the D.C. Circuit decided *Chambers* (quoting *Austin*, 2024

7

WL 864270, at *10)); *Stewart v. U.S. Dep't of Agric.*, No. 23-CV-1194, 2024 WL 4332618, at *4 (D.D.C. Sep. 27, 2024) (concluding that *Babb* did not alter the meaning of "personnel action" in Title VII's federal-sector provision); *see also Hunter v. Rubio*, No. 24-CV-480, 2026 WL 496871, at *3 n.3 (D.D.C. Feb. 23, 2026) (assuming without deciding that "*Babb* does not require different standards for federal and non-federal Title VII claims"); *Chien v. Rubio*, No. 16-CV-1583, 2025 WL 3251049, at *5 (D.D.C. Nov. 21, 2025) ("As to Defendant's assertion that *Chambers* does not apply to federal-sector discrimination claims, the court believes that every judge in this District to have considered this argument has rejected it."); *Ellis v. Noem*, No. 24-CV-977, 2025 WL 2732733, at *11 (D.D.C. Sep. 25, 2025) (agreeing that Defendants' argument is "without merit").[2]

### B.   "Some Harm"

Defendants next argue that, even if *Muldrow* applies, Mr. Desmarais has failed to allege "some harm" deriving from the deprioritization of his religious accommodation request. ECF No. 28, at 13 (quoting *Muldrow*, 601 U.S. at 354-55). The court has already ruled on this issue, ECF No. 18, at 11, and the factual landscape has not changed since the court considered Defendants' motion to dismiss, *see* Jan. 24, 2025 Scheduling Order (allowing Defendants to file a Rule 12(c) motion before proceeding to discovery); *see also Ramos v. Lynch*, No. 13-CV-328, 2015 WL 11303199, at *7 (D.D.C. July 7, 2015) (rejecting a defendant's claim where, "[i]n moving for judgment on the pleadings on this aspect of [a] claim, defendant repeat[ed] the arguments that did not carry the day on the motion to dismiss"). In its previous ruling, the court

---

[2] Indeed, the D.C. Circuit recently applied the *Muldrow* standard for showing an adverse action to a federal employee's claim under the ADEA, the same statute at issue in *Babb*. *See Van Horn v. Del Toro*, No. 23-5169, 2024 WL 4381186, at *2-3 (D.C. Cir. Oct. 3, 2024) (per curiam) (noting that the employer had conceded that the actions at issue were viable personnel actions under the ADEA).

found that Mr. Desmarais had sufficiently alleged that he suffered an adverse action based on Defendants' alleged policy of processing only medical accommodation requests. ECF No. 18, at 10-11; *see* ECF No. 1 ¶ 50. The court concluded that "[b]eing subjected to . . . a blatantly discriminatory workplace policy . . . is itself a harmful condition of employment." ECF No. 18, at 11.

Under the law-of-the-case doctrine, "a court involved in later phases of a lawsuit should not re-open questions decided . . . by that court or a higher one in earlier phases." *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995). The doctrine counsels that "the *same* issue presented a second time in the *same* case in the *same* court should lead to the *same* result." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc). While courts retain the power to revisit their prior decisions, "as a rule[,] courts should be loath[] to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice,'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)), or there is an "intervening change in controlling legal authority," *LaShawn A.*, 87 F.3d at 1393. Neither circumstance is present here. While Defendants dispute the court's application of *Muldrow* in declining to dismiss Count IV, they have not established that the court's decision was clearly erroneous. Nor does *Muldrow* represent an intervening change in the law after the court issued its ruling. While Defendants are correct that the Supreme Court decided *Muldrow* after the parties completed briefing on the motion to dismiss, meaning that the court reached its conclusion "without the benefit of adversarial presentation of the [*Muldrow*] issue," ECF No. 31, at 4; *see* ECF No. 28, at 14, the parties did not seek supplemental briefing to address *Muldrow*. In any event, *Muldrow* is largely consistent with the D.C. Circuit's en banc decision in *Chambers*, which the parties did cite in their briefing. ECF

No. 13-1, at 24-25; ECF No. 16, at 8; *see Wilson*, 2025 WL 1000666, at *21 n.41 ("Courts in this district have similarly found that *Muldrow* and *Chambers* can comfortably co-exist.").

Nevertheless, the court will consider Defendants' arguments regarding *Muldrow* and reject them on the merits. Defendants contend that Mr. Desmarais "did not allege that he suffered any harm from the 'deprioritization' of his request, apart from having to wait for an adjudication of his request." ECF No. 28, at 16. In Defendants' view, the court's conclusion rested on the incorrect premise that "alleging *any* differential treatment whatsoever suffices to state a Title VII claim." ECF No. 31, at 4; *see* ECF No. 28, at 15-16. While such an approach may have been permissible under *Chambers*, Defendants argue that "*Muldrow* conclusively forecloses such an understanding" because the Supreme Court required plaintiffs to allege "some harm" on top of differential treatment. ECF No. 28, at 16. As further support, Defendants point to Justice Kavanaugh's concurrence in *Muldrow*, which "respectfully disagree[d] with the Court's new some-harm requirement" because "[t]he discrimination is harm." 601 U.S. at 364-65 (Kavanaugh, J., concurring); *see* ECF No. 28, at 16. Mr. Desmarais counters that his allegations satisfy *Muldrow*, because Defendants "depriv[ed] [him] of equal access to the accommodation process" and subjected him to a "different set of rules solely because of his faith." ECF No. 30, at 13.

Under *Muldrow*, Mr. Desmarais must allege "some harm respecting an identifiable term or condition of employment," but that harm need not be "'significant[,] . . . [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." 601 U.S. at 355. Since *Muldrow* and *Chambers*, courts in this Circuit have interpreted the phrase "terms, conditions, or privileges of employment" in Title VII, 42 U.S.C. § 2000e-2(a)(1), to "embrace actions unrelated to an employee's formal job-related duties and responsibilities when such actions nevertheless impacted discernable aspects of an employee's

working conditions, professional opportunities, or potential for career advancement," *Rhone*, 2025 WL 3017791 at *6; *see, e.g.*, *Liu v. Georgetown Univ.*, No. 22-CV-157, 2022 WL 2452611, at *8 (D.D.C. July 6, 2022) (concluding that the plaintiff plausibly alleged that the opportunity to serve as first author on a research abstract was a "term, condition, or privilege of employment"); *Phelan v. Noem*, No. 24-CV-939, 2025 WL 2732749, at *8 (D.D.C. Sep. 25, 2025) (holding that a plaintiff sufficiently alleged adverse actions based on his employer's ignoring his request for information about the hiring process); *Mitchell v. Garland*, No. 23-CV-2412, 2024 WL 3251217, at *4 (D.D.C. July 1, 2024) (determining that a plaintiff's supervisors' refusal to respond to her messages in a timely manner was an adverse action). As the D.C. Circuit emphasized in *Chambers*, this is a "capacious" standard that "evince[s] [a] [congressional] intent to strike at the entire spectrum of disparate treatment . . . in employment." 35 F.4th at 874 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)); *see Muldrow*, 601 U.S. at 365 (Kavanaugh, J., concurring) (providing illustrative examples of what constitutes "some harm," including a loss in "money, time, satisfaction, schedule, convenience, commuting costs or time, prestige, status, career prospects, interest level, perks, professional relationships, networking opportunities, effects on family obligations, or the like").

    Here, Mr. Desmarais plausibly alleges that he experienced "'worse' treatment" because of his religion. *Muldrow*, 601 U.S. at 354 (quoting *Bostock v. Clayton Cnty.*, 590 U.S. 644, 658 (2020)). He alleges in his complaint that Defendants "advised that [they] would not be responding to any religious accommodations requests" and "refused to advise as to when, if ever, [they] would cease" this policy. ECF No. 1 ¶ 50. He further alleges that Defendants "ignored" his religious accommodation request for months, leaving him in a state of uncertainty—notwithstanding the "*de facto* accommodation . . . in place*,*" ECF No. 17, at 7—while others' requests for non-religious

11

accommodations were processed and resolved in a timely manner, ECF No. 16, at 1-2, 12; *see* ECF No. 13-9, at 1.  These allegations suggest that Defendants' policy "negatively impacted [Mr. Desmarais's] work environment," which is sufficient to clear *Muldrow*'s low bar. *Hollingsworth v. Vilsack*, No. 23-CV-2427, 2024 WL 4332118, at *9 (D.D.C. Sep. 27, 2024), *appeal dismissed sub nom.*, *Hollingsworth v. Rollins*, No. 24-5267, 2025 WL 1457915 (D.C. Cir. May 14, 2025).

    Accordingly, drawing all reasonable inferences in his favor, the court finds that Mr. Desmarais has alleged more than "differential treatment" alone.  *See* ECF No. 28, at 15-16.  Rather, his complaint contains factual allegations that Defendants' differential treatment altered the terms and conditions of his employment by subjecting him to a facially discriminatory policy that stemmed from religious animus and created uncertainty around his ability to obtain an accommodation on equal terms.  *Cf. Muldrow*, 601 U.S. at 364-65 (Kavanaugh, J., concurring) (noting that anyone who has been subject to differential treatment "should easily be able to show some additional harm—whether in . . . satisfaction, schedule, . . . , interest level, perks" or the like); *see Peifer v. Pa. Bd. of Probation & Parole*, No. 21-CV-5432, 2024 WL 6963861, at *1 n.1 (E.D. Pa. Oct. 31, 2024) (concluding that allegations of "emotional stress, humiliation, and fear of losing her job, FMLA leave, and a regular paycheck" were sufficient to constitute "'some' employment-related harm for [the plaintiff's] prima facie case under *Muldrow*").  The allegations that Defendants' policy left Mr. Desmarais "worse off" than his non-religious colleagues are sufficient to survive a motion to dismiss.  *Muldrow*, 601 U.S. at 359; *see Dixon v. Blinken*, No. 22-CV-2357, 2024 WL 4144105, at *3 (D.D.C. Sep. 11, 2024) ("[The plaintiff] alleges that he was treated 'worse' than his female coworker . . . .  That is all Title VII requires to state a claim.").  It is therefore premature to conclude that Mr. Desmarais's allegations could not

constitute an alteration of the "terms, conditions, or privileges of [his] employment."  42 U.S.C. § 2000e-2(a)(1); *see Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (stating that a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).

## V.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants' Motion for Judgment on the Pleadings, ECF No. 28, is **DENIED**.  It is further **ORDERED** that the parties shall file a joint status report on or before March 11, 2026, proposing next steps in this litigation.

**SO ORDERED.**

_____
LOREN L. ALIKHAN
United States District Judge

Date:   February 25, 2026